Patrick Cosgrove v. Charles J. Cummings, Appellant.

190  525
198   61
190  525
41SC 315

*Contract—Breach of contract—Review.*

The Supreme Court will not reverse a judgment on a verdict for plaintiff in an action to recover a balance due on a written contract to stock logs, where the only defense is that the defendant was injured by the improper way in which the work was done, and the evidence upon this subject is conflicting.

*Practice, Supreme Court—Answer to point.*

Where a judgment on a verdict is in other respects satisfactory to the Supreme Court, it will not reverse because the trial judge, instead of affirming one of defendant's points, referred the jury to the instruction he had given them on the same subject in his general charge, which instructions were substantially an affirmance of the point.

Argued March 15, 1899. Appeal, No. 108, Jan. T., 1899, by defendant, from judgment of C. P. Lycoming Co., Sept. T., 1897, No. 348, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for breach of written contract. Before MAYER, P. J., of the 25th judicial district, specially presiding.

At the trial it appeared that on October 8, 1895, plaintiff and defendant entered into a written contract by which the former agreed to stock a large number of logs for the latter. The defense was that the defendant was injured by the improper way in which the work was performed.

The court charged in part as follows :

The principal controversy in the case grows out of the failure on the part of the plaintiff, as alleged by the defendant, to fully perform his part of the agreement. And it is alleged by the defendant that in consequence of that he has suffered a large amount of damages, which he alleges more than overpays the balance that is due the plaintiff under the contract. The plaintiff claims something over $5,000 due him under the contract, which the defendant alleges that by reason of the failure on the part of the plaintiff to carry out the full terms of the contract he is damaged to the extent of what would more than cover the balance claimed to be due Cosgrove under the agreement, and this is the principal controversy between the plaintiff and the defendant. In the first place, Cummings alleges that a quantity of the logs that were to come to the mill were broken by means of the slide ; that as they came down over the slide the logs were broken and could not be manufactured into lumber on the mill, and in consequence of that he lost this broken and damaged lumber, and that Cosgrove should respond to him in damages for the loss of the broken and damaged lumber. Now in order to take this lumber from this tract of land, it being proved that the land was very steep, it was necessary to erect a slide. [This slide was erected by Cosgrove on the land and the logs were taken down the slide into Pine creek and from there run into a gut and from there to the mill pond. Now if the slide was carefully and properly erected, Cosgrove would not be responsible in case some of the logs were broken and damaged in their descent to the mill, because there could be no other possible way by which logs could have been delivered from the tract and run down to the mill.] [10] If, however, the slide was carelessly and negligently constructed, and by reason of that the logs were damaged and broken, Cosgrove

would be liable to respond to the defendant in damages for whatever logs were lost or damaged by reason of the careless or negligent construction of the slide. Whether the slide was properly and carefully constructed or negligently and carelessly constructed will be for the jury to determine under the evidence. There is another item of damage claimed, the loss of the logs in the stream. It appears, and the evidence shows, that when the logs came down the slide they ran into Pine creek, and Cosgrove, according to the testimony, erected headgates at the end of the gut, and the logs were taken out of Pine creek and put in the gut and from there taken down to the mill pond. [And it is alleged by Cummings that sometime in January, 1896, there was a flood in the stream and that about 25,000 feet of the logs were carried down the stream and lost; and also in June, 1896, another flood occurred in the stream by reason of which 125,000 feet of logs were lost, and went down the stream.] [11] Now whether or not the plaintiff should be charged with the loss of these logs will depend entirely on the view the jury take of the evidence in the case. [Cummings was bound to keep the mill pond of the mill in such a condition as to the quantity of logs in it that Cosgrove could be enabled to put the logs in there as they were needed at the mill, and Cummings was bound to run the mill during that time and manufacture the logs into lumber so that Cosgrove could go on with the contract and deliver the logs into the mill pond. And if at any time the mill pond was in such a condition or was so full of logs by reason of the mill not running that Cosgrove could not deliver the logs into the gut and into the pond, by reason of which the logs went away, Cummings could not charge Cosgrove with the logs that went off.] [7] But if the mill was at all times in such a condition that Cosgrove could run the logs into the gut and into the pond, and he kept them in the creek, and by reason of the floods they were lost to the defendant, then he would be liable to respond in damages for whatever logs were gone; unless from the testimony in the case you believe that Cummings undertook to become responsible for the logs being in the stream. According to the testimony of the two Welshanses the mill pond was full, and they desired to get the logs through the gut into the mill pond, and they went to Cummings after the mill was shut

down and stated that the mill pond was full and that they de-
sired to put the logs in.    According to their testimony Cum-
mings stated that the logs were paid for and that he would be
responsible for the logs in case they were carried away.    Cum-
mings, however, denies that any such conversation took place.
He alleges he had no such conversation with either of the two
Welshanses, and he never at any time became responsible for
the logs put into Pine creek.    The evidence shows that Cos-
grove was notified by Cummings at various times not to put
the logs into the creek, and written notices have been exhibited
in evidence on the part of the defendant showing that Cosgrove
had notice from Cummings that he should not put the logs
into Pine creek.    [If Cosgrove, after the notices were received
and the mill pond was not in condition to receive the logs, allowed
them to remain in the stream and they were lost, he would be
responsible, unless the jury find that from the evidence the
mill pond was not in a condition to receive them or that Cum-
mings assumed to be responsible for the loss of them when he
was called on to make room for the logs as testified to by the
two Welshanses.] [8]

There is another item of damage claimed by the defendant,
and that is the failure on the part of Cosgrove to fully perform
his portion of the contract.    It is alleged by the defendant that
a quantity of timber and logs were left upon the tracts of land
which he failed to cut and deliver under the agreement.    Now
the general rule is where a party enters into a contract to do
work for another it is incumbent upon him at the trial of the
case, where the suit is brought on the contract, to show that he
fully performed his part of the agreement.    The defendant is
not bound to fulfil his covenants unless the plaintiff shows that
he fully performed the contract on his part.    But the strictness
of this rule has been modified, and the rule as modified is [that
where there has been an honest endeavor on the part of the
party to perform his agreement or, in other words, where there
has been a substantial performance on the part of the party to
the contract to do the work, and the other party has received
the benefit of his labor, then he would be entitled to recover the
contract price, deducting from that whatever would fully reim-
burse and compensate the other party for damages sustained by
reason of the other party not having fully performed his part

of the contract.] [9] And it will be for the jury to determine, under the evidence, whether Patrick Cosgrove has substantially performed his part of the agreement. If the evidence in this case shows that he has not substantially performed his part of the contract then it would be a bar to a recovery on his part, because as we have already said to you he must show that he fully performed his agreement before he could compel the defendant to pay the money which he has stipulated to do. And the question of his performance or nonperformance or substantial performance is a question of fact which we submit to you under the testimony. The evidence on the part of the plaintiff is that he fully performed that part of his agreement.

Plaintiff's seventh point and the answer thereto were as follows:

If the jury find from the evidence that plaintiff negligently placed a large number of logs in Pine creek; that the same were carried away by a rise in said creek and lost, then he is responsible to the defendant for the value thereof, less the cost of delivery as per contract. *Answer:* Whether or not the plaintiff is liable will depend on the view the jury takes of the evidence under the instructions we have given in our general charge. [3]

Verdict and judgment for plaintiff for $4,653.53. Defendant appealed.

*Errors assigned* among others were (3, 7–11) above instructions, quoting them.

*W. E. Ritter* and *G. B. M. Metzger*, with them *F. P. Cummings*, for appellant.

*N. M. Edwards* and *John J. Reardon*, for appellee.

PER CURIAM, March 27, 1899:

The plaintiff's right to recover in this case depended on disputed questions of fact which were clearly for the exclusive consideration of the jury. They were accordingly submitted in a clear, substantially accurate and fully adequate charge to which no just exception can be taken. The result was a verdict for the plaintiff, which necessarily implies a finding by the jury of all the material facts in his favor.

It is unnecessary to consider the specifications of error in detail. There is nothing in either of them that requires a reversal of the judgment. Defendant was entitled to an affirmance of his seventh point for charge, recited in the third specification; but, instead of affirming the point in express terms, the learned trial judge referred the jury to " the instructions " he had given them on the same subject in his general charge. Turning to the instructions thus referred to, we find that they are substantially an affirmance of the point in question, and must have been so understood by the jury.

Judgment affirmed.