## Commonwealth *v.* Crossmire, Appellant.

*Criminal law—Murder—Challange for cause.*

If from the examination of a juror on his voir dire it appears that he has the ability and disposition to render a verdict on the evidence alone, the law adjudges him to be competent, notwithstanding the fact that he states that it would require evidence to change the impression or opinion formed from what he had heard or read about the affair under investigation.

*Challenge for cause—Review.*

In reviewing the decision of the lower court upon a challenge of a juror, on the ground that he had formed an opinion as to the case, nothing short of palpable error in the decision will justify the Supreme Court in reversing it.

*Evidence—Opinion of expert.*

On the trial of an indictment for murder, after a physician has described the injuries found on the body of the deceased, it is not improper to permit him to state what in his opinion caused the death, and how the injuries upon the person were inflicted.

*Evidence as to manner of killing—Prior declarations.*

Evidence that the prisoner showed certain witnesses a peculiar grip by which he claimed he could easily " shut anybody's wind off" is admissible, where it appears that the grip thus shown was the same as the grip described by the physician in explaining how the deceased was strangled.

*Evidence—Threats—Attempt to procure insurance on life of deceased.*

Upon a trial of indictment for murder it is competent for the commonwealth to show that the prisoner had made threats against the deceased, who was his mother; that he had frequently quarreled with her; that on one occasion he had made an assault upon her which left its marks upon her person; and that a short time before her death he had sought but failed to obtain an insurance on her life without her knowledge.

*Withdrawal of evidence—Discretion of court.*

The offer of evidence before a jury, which the evidence fails to sustain, and its subsequent withdrawal, are matters which rest largely in the discretion of the trial court, and the exercise of this discretion will not be reviewed by the Supreme Court except in a case of abuse.

*Charge of the court—Degree of murder.*

On the trial of an indictment for murder where there is no evidence to reduce the homicide to manslaughter, it is not improper for the court to omit instructions defining manslaughter.

Argued May 1, 1893. Appeal, No. 451, Jan. T., 1893, by defendant, Ralph Crossmire, from judgment of O. & T. McKean Co., Feb. T., 1893, No. 2, on verdict of guilty. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and THOMPSON, JJ.

Indictment for murder.

At the trial, before MORRISON, J., J. G. Paul, called as a juror, testified on his voir dire: "Q. Where do you reside? A. Sawyer City. Q. What is your business? A. It has been a merchant until a couple of weeks ago. Q. How old are you? A. Twenty-eight. Q. Do you know the defendant? A. I do not. Q. Did you know his mother? A. I did not. Q. You are a citizen of the United States? A. I am. Q. Have you heard or read of this cause? A. I have. Q. Have you formed or expressed an opinion as to the guilt or innocence of the defendant? A. I have. Q. Could you go into the jury box and render a verdict upon the evidence uninfluenced by the opinion you have formed? A. Perhaps it would take some evidence to remove my opinion. Q. Do you think you could try the case upon the evidence and not let the opinion you have influence your verdict? A. I think perhaps I could. Q. Have you conscientious scruples against capital punishment? A. No, sir. Q. You believe in hanging in a proper case? A. I do."

Mr. Mullin: "Q. What papers do you read? A. The 'Bradford Era' and the 'Pennsylvania Grit.' Q. You talked with your neighbors about it, about the time? A. Yes, sir. Q. And you formed your opinion at that time? A. I did. Q. And formed it from what you had heard and read about it? A. I did. Q. Did you form a well defined opinion as to the guilt or innocence of the defendant? A. I did, according to what I read. Q. Does that opinion remain with you now? A. It does. Q. Now wouldn't it take evidence to remove that opinion? A. It would. Q. Then the opinion you have formed would influence your verdict to the extent that it would take evidence to remove it? A. Yes, sir. Q. You think you could not go

into the jury box and try the case and not be influenced more
or less by your opinion ?   A. It would influence it a little, certainly."

The Court: "Q. Could you go into the jury box and listen
to the evidence and bring in a verdict in accordance with
that evidence, uninfluenced by the opinion you have formed?
A. Perhaps I could ; perhaps the opinion would influence me
a little of course.   Q. But after you had heard the evidence
could you make up your verdict on that evidence, uninfluenced
by the present opinion you now have ?"

Juror challenged by defendant, challenge overruled and exception. [1]

The record as printed in appellant's paper book contains no
answer to the last question, but appellee states that a corrected
copy of the stenographer's notes shows the answer to be : " I
think perhaps I could."

Patrick Brennan stated, on his voir dire, that he had formed
an opinion, but that he could decide the case on the evidence,
uninfluenced by the opinion which he had formed.   Challenge
overruled and exception. [2]

Under objection on part of defendant, Dr. S. D. Freeman
was permitted to give his opinion as an expert as to the manner
in which the deceased was killed.   Exception. [3]

Under objection and exception the commonwealth was permitted to offer evidence of quarrels between defendant and deceased, of threats made by him ; that on one occasion he had
made an assault upon her which left its marks on her person,
and that in April or May before her death he sought but
failed to obtain an insurance on her life without her knowledge. [5–7, 12]

Will Cornelius was permitted to testify under objection and
exception that on the evening on which the murder was committed he saw tracks in the snow on the road where other witnesses had seen the prisoner going to the spot where the murder
was committed. [8]

Mark Sheldon was permitted to testify under objection and
exception that he saw the prisoner on the night of the murder
on the road leading to the spot where the murder was committed. [9]

When N. F. Ferris and Elmer Beckwith were on the stand,

COMMONWEALTH v. CROSSMIRE, Appellant.     307

1893.]        Statement of Facts—Opinion of the Court.

the commonwealth offered to prove that defendant showed the witnesses a peculiar grip, and stated to them that he could shut a person's wind off in that way and they couldn't halloo or make an outcry, and that it is the same grip as described by Dr. Freeman as the one by which the deceased must have been killed. This before the killing. Objected to as incompetent and irrelevant. Objection overruled, and exception. [10, 11]

When Dr. S. D. Freeman was on the stand, he was permitted under objection and exception to state that the prisoner's overalls showed traces of blood. [13]

Verdict, guilty, and judgment. Defendant appealed.

*Errors assigned* were (1, 2) in overruling challenges of jurors ; (3, 5–13) rulings on evidence ; (4) in permitting preceding evidence to be offered in presence of jury ; (18) in omitting to charge fully upon the law and evidence in the case ; the assignments not quoting the evidence or bills of exceptions, but referring to the exceptions by number as extracted from the record and printed before the charge of the court.

*Eugene Mullin, T. F. Mullin* with him, for appellant, cited : Allison v. Com., 99 Pa. 32; Staup v. Com., 74 Pa. 458; Franklin Fire Ins. Co. v. Gruver, 100 Pa. 266; Flint v. Com., 5 Ky. L. R. 51; Lane v. Com., 59 Pa. 371; Rhodes v. Com., 48 Pa. 396.

*J. W. Bouton*, district attorney, *P. R. Cotter* with him, for the Commonwealth, cited : Clark v. Com., 123 Pa. 574; Allison v. Com., 99 Pa. 32; Whart. Cr. Ev., 8th ed. § 418; Williams v. State, 64 Md. 384; Newton v. State, 21 Fla. 53 ; State v. Mahan, 68 Iowa, 304 ; State v. Vincent, 24 Iowa, 570; Batten v. State, 80 Ind. 394 ; Com. v. Sturtivant, 117 Mass. 122 ; People v. Willson, 109 N. Y. 345 ; 9 A. & E. Enc. L. 718; People v. Hendrickson, 1 Parker, 406 ; Sayres v. Com., 88 Pa. 291; Jefferds v. People, 5 Park. Cr. Cas. 522; Washington v. State, 36 Ga. 222; Crawford v. State, 12 Ga. 145; Brown v. Com., 76 Pa. 339; McMeen v. Com., 114 Pa. 305; Lynch v Com., 77 Pa. 205.

OPINION BY MR. JUSTICE McCOLLUM, July 19, 1893.

Ralph Crossmire, the appellant, was accused and convicted,

in the court of oyer and terminer of McKean county, of having, on the night of the 19th of November last, murdered his mother, Lucetta Crossmire. That the conviction was fully justified by the evidence is not denied, but it is claimed that the learned judge of the court below erred in passing upon the qualifications of certain jurors who were challenged for cause, and in his rulings upon certain offers of evidence which were objected to by the appellant. It is also claimed that the charge was inadequate because it did not define voluntary manslaughter, or refer in detail to the testimony of the defence.

The first and second specifications of error call in question the qualifications of jurors Paul and Brennan, who, upon the appellant's challenge for cause, were examined on their voir dire as to the opinions they had formed respecting the guilt or innocence of the accused. It appears from this examination that the jurors had impressions or opinions on the subject, based on what they had heard and read about the murder, but the opinions thus formed were not deliberate and fixed opinions, or such as would prevent a just decision of the case upon the evidence. It is true that some of the questions addressed to the jurors elicited answers which, if standing alone and unexplained, might disqualify them. But their competency was not determined by a single answer; it was ascertained, and properly so, from the examination as a whole : Clark v. The Commonwealth, 123 Pa. 555. Opinions formed as above stated are not disqualifying if they do not deny to legal evidence its legitimate effect. Intelligent men receive impressions as to the nature and character of any transaction from what they hear and read of it, and it is not unusual to speak of these as opinions. If the mere existence of such opinions constituted a bar to the performance of jury duty by the persons entertaining them, it would be well nigh impossible in the judicial investigation of a murder to draw from a panel composed of sober, intelligent and judicious persons of the county the name of a person qualified to serve as a juror. Hence, if, from the examination of the juror, it appears that he has the ability and disposition to render a verdict on the evidence alone, the law adjudges him to be competent, notwithstanding it would require evidence to change the impressions or opinions formed from what he had heard or read about the affair under investigation. In Allison v. The Common-

wealth, 99 Pa. 17, we said: "Impressions formed by the mind necessarily remain until something occurs to remove them. This is a law of our nature and cannot be changed by human agency. That evidence would be required to change these impressions, has but little weight. Such must always be the fact, even in cases of slight impressions or loose opinions. An opinion once formed necessarily exists until something else changes it." In O'Mara v. The Commonwealth, 75 Pa. 424, juror Tingley said he had an opinion formed from what he had read of the murder, and unless the defendants satisfied him by evidence that he had a wrong opinion he should still hold to it, but he expressed the belief that he could decide the case on the evidence uninfluenced by that opinion, and he was held qualified. We might cite many cases from our own reports to the same effect, but we do not deem it necessary to do so. It is enough to say of them that in our judgment they sustain the rulings of the court below upon the challenges in question. While juror Paul was not as positive and emphatic as juror Brennan was in the expression of a belief in his ability to decide the case upon the evidence alone, his examination justified the conclusion of the learned court below that he was competent.

It is proper to add that, in reviewing the decision of the court below upon a challenge for such cause as is alleged in this case, nothing short of palpable error in it will justify a reversal of it. The obvious reason for this is that, as the examination was in the presence and under the control of the trial judge, he had better opportunity for discovering the nature and strength of the alleged disqualifying opinion than a printed report of the juror's testimony affords.

It was not error to permit Dr. Freeman, after he had described the injuries found on the body of the deceased, to state what in his opinion caused her death and how the injuries upon her person were inflicted. Nor are we able to discover any error in the admission of the evidence of Ferris and Beckwith in relation to the peculiar grip which the appellant showed to them and by which he claimed he could easily "shut anybody's wind off." It appears that the grip thus shown was the same as the grip ·described by Freeman in explaining how the deceased was strangled and how the bruises on her head and neck were made. That there was such a grip known to the appellant was a cir-

cumstance for the consideration of the jury in connection with the testimony of Freeman in relation to the cause of death.

It was certainly competent for the commonwealth to show that the appellant had made threats against the deceased; that he had frequently quarreled with her; that on one occasion he made an assault upon her which left its marks on her person, and that in April or May before her death he sought but failed to obtain an insurance on her life without her knowledge. This was a species of evidence appropriate to the issue, and it needs no citation of authority to support the rulings under which it was admitted.

We cannot see how the appellant was prejudiced by the offers made in the presence and hearing of the jury, and fully sustained by the evidence given under them, or by the offer which the evidence failed to sustain when such evidence was formally withdrawn from the jury. But this is a matter which rests largely in the discretion of the trial court, and its exercise of the discretion will not be reviewed except in a case of abuse. There is no evidence of such abuse on this record.

The evidence of Will Cornelius as to the tracks in the snow, of Mark Sheldon in reference to the identity of the person he met on the night of the murder, and of Dr. Freeman in relation to blood spots on the overalls of the appellant, was properly received. It was relevant, and the weight to be given to it was for the jury.

It remains to inquire whether there was error in the charge. In considering this complaint we note first that all the points submitted by the appellant's counsel were affirmed. The instructions as to the degrees of murder were full and clear, and the duty of the jury in case they found the defendant guilty to find and state the degree in their verdict, was sufficiently explained. There was no evidence to reduce the homicide to manslaughter, and there was therefore no error in the omission of instructions with reference to it: Brown v. The Commonwealth, 76 Pa. 339; McMeen v. The Commonwealth, 114 Pa. 305; and Clark v. The Commonwealth, supra. The reference to the testimony was impartial and adequate, and the appellant has no just cause to complain of the instruction in regard to evidence of good character. The specifications are overruled.

The judgment is affirmed, and it is ordered that the record be remitted to the court below for the purpose of execution.