# Commonwealth *v.* McMurray.

*Criminal law—Murder—Charge of the court.*

In a murder trial the trial judge cannot be convicted of error in saying to the jury, " You will perceive that we have that which demands and requires the admission of counsel for the defendant that this man is guilty of at least murder of the second degree," where there are facts proved by the commonwealth, undisputed, conceded, admitted and sworn to by the defendant himself, from which the law sanctioned but one conclusion, that the prisoner was guilty of at least murder of the second degree. In such a case a distinction sought to be set up between an admission of guilt " at least," and " at most " of second degree, has no substance where there is no evidence whatever from which the jury could find a verdict of manslaughter.

*Murder—Criminal law—Admission of counsel.*

In a murder trial admissions of fact by counsel are evidence against the prisoner if made in open court, and may be used by the jury as the basis of a verdict.

*Criminal law—Murder—Degree of murder.*

On a murder trial where the undisputed evidence establishes murder, and the defense is intoxication, and the jury are told in the most explicit terms that there are four verdicts, any one of which they may render, to wit: not guilty or guilty of manslaughter, of murder of the second degree, or of the first degree, and in the choice among these four they are left entirely free to exercise their own judgment, a verdict of guilty of murder of the first degree will not be set aside by the Supreme Court.

*Practice—Trial—Points—Murder—Intoxication.*

A judge is not bound to charge the jury in the exact language of the point, but may choose his own words, and if the point affirmed without qualification would be likely to give the jury an erroneous impression, it is his duty to add such explanations or qualifications as will correct such tendency.

In a murder trial where points on the subject of intoxication may tend to lead or confirm the jury in the popular error that a drunken man is not responsible for crime, the court may qualify its answers to the points so as to remove such impression from the jury's mind. Thus, in answer to such points the court may call the attention of the jury to threats by the prisoner, his repeatedly seeking the deceased, and his continued drinking up to the killing, as consistent with the view that he had formed the design to kill, and was nerving himself up to its execution.

*Criminal law—Murder—Evidence—Intoxication.*

On the trial of an indictment for murder where the defense has introduced evidence to show intoxication, the commonwealth may in rebuttal offer testimony of the condition of the prisoner as to sobriety previous to

the killing, although the defense may have already given the same or closely similar evidence on the same point.

Argued Oct. 22, 1900.  Appeal, No. 104, Oct. T., 1900, by defendant, from judgment of O. & T. Allegheny Co., March T., 1900, No. 12, on verdict of guilty of murder in the first degree, in case of Commonwealth v. George W. McMurray, Jr.  Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.  Affirmed.

Indictment for murder.  Before McClung, J.

The circumstances of the killing are fully stated in the opinion of the Supreme Court.

At the trial, G. S. Campbell, a witness for the commonwealth in rebuttal, testified under objection and exception that on the day of the killing and prior to the killing, the prisoner presented a check at the bank where the witness was employed, and at that time he was perfectly sober. [13]

The court charged in part as follows:

[The issue has been already simplified somewhat by the admission of counsel, and I will endeavor to simplify it before I get through with the charge; but it is necessary first to look over the whole field, and present before your minds the definitions of the different grades of guilt that you may find.] [1]

To reduce a wilful, unlawful killing to manslaughter, there must be sufficient cause of provocation and state of rage or passion, without time to cool, placing the prisoner without the control of his reason, and suddenly impelling him to the deed.  If any of these be wanting, if there be provocation without passion, or passion without sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing would be murder.  Whenever the act indicates a deadly revenge, and not the mere heat of blood, whenever it is the result of a devilish disposition and not merely the frenzy of rage, it is not manslaughter, but murder.

Now, in this present case, there is no evidence of provocation, nor any claim upon the part of counsel that provocation existed; so that we, perhaps, need say nothing more with regard to the definition of manslaughter.  I have simply indicated to you what divides between the grades of crime, murder and man-

slaughter. [But, as I have already said, if you determine that the crime was murder and not manslaughter, then you have a further duty resting upon you; and here, under the admission of counsel, comes the strain of this case; that is, to determine whether it is murder of the first degree or murder of the second degree.] [2]

Our act of assembly, which is the rule which governs you, provides : All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree.

Now, of course, there is no pretense that there was any poisoning in this case, and there is no pretense that it was committed in the attempt to perpretrate any of these felonies spoken of. So that for the purposes of this case, murder of the first degree is murder which is perpretated wilfully, deliberately and premeditately.

What, then, is the meaning of the term wilfully, deliberately and premeditately? What does deliberation mean,—the deliberation which distinguishes between murder of the first degree and murder of the second degree? It does not mean that the defendant shall have studied and brooded over the thought of taking the life of his victim. It means that he shall be found to have had the specific, fully formed intent to kill. That intent to kill need not exist for any particular length of time. There must, of course, be time for the mind to become fully conscious of its purpose, and form the design to kill. If this specific intent exists, however, it matters not how quickly it may have been formed. If there be time to frame in the mind fully and consciously the intent to kill, and to select the means or weapon of death, and to think and know beforehand the use to be made of it, there is time enough to deliberate, although it may be very short.

You have now the definitions of the different grades of the crime. In this case, as I have said, there is no pretense made by any one that this was not an unlawful killing. There is no evidence of insanity, or no pretense made that there is any such de-

fense in the case. The law, then, aids you by a presumption. If you find a wilful, unlawful killing, the law presumes that that killing is also malicious; that is, that it is murder and not manslaughter. That presumption, however, only goes as high as murder of the second degree. Recollect, that while manslaughter is an unlawful killing without malice, murder of the second degree is an unlawful killing with malice; and murder of the first degree is an unlawful, wilful, malicious killing, with deliberation and premeditation, with this specific, fully formed intent to kill. [As I have said, the presumption of the law is, that this unlawful, wilful killing is murder of the second degree; and in this present case it has been candidly conceded to you by the learned counsel for the defense that there was an unlawful, wilful, malicious killing in the eyes of the law. So that we have here a starting point; that is the conclusion which the law would lead you to; and counsel for the defense very candidly do not attempt to mislead you as to the law.] [3]

The question, then, seems to be, assuming that you come to this point in your deliberation, is this a case of murder of the second degree or murder of the first degree? [The burden is upon the commonwealth to raise it from the second degree to first degree; that is, the commonwealth must, in addition to all that appears from the admissions from the defendant and from his counsel, and the uncontradicted testimony and unquestioned testimony in the case, and the presumptions of the law, the commonwealth must, in addition to this, by affirmative evidence, if it desires a verdict of murder of the first degree, raise it by evidence which will convince you beyond a reasonable doubt.] [4] And, as I have already said, this is the point where your careful consideration of the evidence in the case is demanded. The commonwealth, while it is bound to offer you evidence which indicates premeditation and deliberation, which indicates that when the party did the act he did it deliberately and premeditately, is not bound to prove that by direct evidence. It is a fact which ordinarily cannot wholly be proven by direct evidence. It may be proven by circumstantial evidence. [I, perhaps, before I go into a discussion of this should say that the real issue here is whether or not the intoxication which he and his counsel allege he was under at the time is sufficient, taking it in connection with all the evi-

dence offered, to prevent an elevation of this verdict to the first degree.] [5] The law, as I have said, does not recognize the condition of mind in which a man gets himself by intoxication as insanity, or as relieving him from responsibility for crime. The safety of society demands that the drunkard shall be held responsible for his crime. It does, however, recognize the fact that there are degrees of intoxication from which a jury may conclude, although the other evidence would indicate deliberation and premeditation, that the man's mind was in such state that he was incapable of deliberating and premeditating; and thus intoxication may reduce a crime from first to second degree, or, perhaps, it would be more proper to speak of it as holding it at second degree; it may prevent the evidence of the commonwealth from raising the crime from second to first degree. It is not the rule of law that a drunken man cannot be convicted of murder of the first degree. A man cannot fortify himself against responsibility for a deliberate murder by getting drunk. But I repeat: It only recognizes the fact that there are degrees of intoxication which may convince you that his mind was in such condition that he was incapable of deliberating, and, therefore, that the crime still remains murder of the second degree.

Is it so in this case? [You will perceive that we have that which demands and requires the admission of counsel for the defendant that this man is guilty of, at least, murder of the second degree.] [6]

[The defendant has submitted to me a number of points. There are quite a number of them. They amount, however, simply to a repetition of two or three familiar principles which I think I have already stated, but I will answer the points, especially as it now occurs to me that the answer to one of them will call out an explanation which you should have in this case.] [7]

4. The burden is upon the commonwealth to raise the crime above murder of the second degree. *Answer:* This is affirmed. I have already told you all of these rules of law. [8]

11. The reasonable doubt affects every degree of the offense charged in the indictment. If the jury (in any case) have a reasonable doubt of the defendant's guilt of murder of the first degree, they should acquit him of murder of the first degree. If the jury have a reasonable doubt (in any case) of the de-

fendant's guilt of murder of the second degree, they should acquit him of murder of the second degree. If the jury have a reasonable doubt (in any case) of the defendant's guilt of manslaughter, they should acquit him of manslaughter, and find him not guilty. *Answer:* This is affirmed; although I again call your attention to the fact that counsel concede that there is no necessity for the latter portion, at least, of that point, as they conceded that there was the crime, at least, of murder of the second degree. [9]

Now the sixth, ninth and tenth points are as follows:

6. Drunkenness is a good and perfect legal defense to murder of the first degree, if shown to exist at the time of the killing to such an extent as to render the defendant unable to form any wilful, deliberate and premeditated design to kill, or incapable of judging his acts and their consequences.

9. If the jury believe from the evidence that the defendant at the time of the killing was so intoxicated that he could not deliberate nor premeditate, the jury should not find him guilty of murder of the first degree.

10. If the jury believe at the time of the killing of Rudge, the defendant was intoxicated to such extent that he was unable to form a wilful, deliberate and premeditated intent to take the life of the deceased, the grade of the homicide is not murder of the first degree. He need not show intoxication to the extent of being unconscious, in order to prevent a verdict of murder of the first degree.

These three points are each affirmed with the explanation that you must not too narrowly interpret the expression "at the time of the killing." Notice that that expression is in each point. Because whilst drunkenness may rebut evidence of premeditation, and cause a jury to find a verdict of second degree where the finding would otherwise be first degree, yet this does not apply to a case where the party, having fully formed the specific purpose to kill, then to nerve himself for the deed takes into his system sufficient stimulant to, after it is taken, interfere with his power to deliberate, and then carries out the purpose previously formed.

I throw in this explanation because it appears in this case that there is evidence, and part of that is the evidence of the defendant himself, that after he had sought a revolver at vari-

ous places, and according to some of the testimony of the commonwealth, which, however, is contradicted by the defendant, or part of it at least, had made threats, and after he had actually purchased the revolver with which, it seems he committed this crime, that he then went to this house and took into his system alcohol in the shape of a large drink of whisky. Now I caution you not to confine the time of the killing so closely as to exclude the force of the suggestion that I have made. Even if he had, after he had formed the intent to kill, and whilst on his way to commit the act, to nerve himself, filled himself so full of alcohol that you would then think that he would not be able to deliberate, and to form the conscious purpose, you still could hold him responsible for committing a deliberate murder, on the ground that he had formed this specific intent before, and simply used the last drink or drinks that he took to nerve himself to commit the deed. A man who would do that, but who had before formed the specific purpose, might still be found guilty of murder of the first degree.

. The tenth point also speaks of the fact that the drunkenness need not be such as to cause unconciousness in order to prevent a murder of the first degree. That is true, but I again call your attention to the fact that the mere existence of drunkenness is not a defense. The law will not allow a man to escape responsibility for crime by simply taking whisky into his stomach, and a jury should not allow him to escape responsibility for the highest grade of crime, unless they find that he has taken so much into his system that his mind is in such condition that he is not only drunk, but incapable of forming the specific intent to kill. [10, 11, 12]

Verdict of guilty of murder of the first degree, upon which sentence was passed.

*Errors assigned* were (1–12) above instructions, quoting them; (13) rulings on evidence, quoting the bill of exceptions.

*Clarence Burleigh,* with him *D. F. Patterson,* for appellant. —None of the counsel for the defendant, during the trial of the case, or at any other time, ever admitted or conceded that the defendant was guilty of the crime of murder of the second degree, or of any other crime whatever.

· · There is a world of difference between the contending, argumentatively, that defendant's crime, at most, could not be more than murder of the second degree, and admitting and conceding that the defendant's crime was at least murder of the second degree.

If we assume for the sake of the argument, that counsel for defendant did make such admissions, still we contend, that the court committed ᾽fatal error in instructing the jury to find a verdict upon the admission and concessions of counsel for the defendant, or to base their verdict upon such admissions and concessions.

As a matter of law, counsel could not make any such admission in this case: Rhodes v. Com., 48 Pa. 396; Lane v. Com., 59 Pa. 371.

There are many things of infinitely less importance in criminal jurisprudence that neither defendant nor counsel can waive: Prine v. Com., 18 Pa. 103; Mills v. Com., 13 Pa. 626; Wharton's Criminal Pleading & Practice, sec. 733; Bishop on Criminal Procedure, sec. 268.

*John C. Haymaker*, district attorney, for appellee.—Although the court in charging the jury, several times referred to the admission of the prisoner's counsel that he was guilty of murder of the second degree, in no instance was any objection made. If the court made a misstatement of a fact in charging the jury, it was the duty of counsel to call his attention to the error at the time: Jaffray & Co. v. Frothingham, 148 Pa. 213; Knapp v. Griffin, 140 Pa. 604; Yerkes v. Wilson, 81* Pa. 9.

There being no evidence in this case to reduce an unlawful killing to manslaughter, there would have been no error had the court omitted to charge the jury, as to what constituted that offense: Com. v. Hollinger, 190 Pa. 155; Com. v. Morrison, 193 Pa. 613; Com. v. Buccieri, 153 Pa. 570; Clark v. Com., 123 Pa. 555; Brown v. Com., 76 Pa. 319; Com. v. Crossmire, 156 Pa. 304.

After fully instructing the jury as to the law, there was no error in the court expressing the opinion that this was not a case of manslaughter, when left free to decide for themselves: McClain v. Com., 110 Pa. 263; Com. v. VanHorn, 188 Pa. 143; Shaffner v. Com., 72 Pa. 60; McMeen v. Com., 114 Pa. 300.

When the court used the words "guilty of at least murder of the second degree" the jury could draw no inference of a higher offense, for the words mean the smallest or lowest.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901:

Appellant at about five o'clock in the afternoon went to the house of Rudge, asked for him, and on his coming to the door, after a very brief conversation, without any altercation whatever, drew a revolver and shot him.   These facts were not only proved by the commonwealth but testified to by the appellant himself on the witness stand.   If anything can ever be said to be admitted at a trial these facts were admitted in this case.

The commonwealth then proved that appellant had been employed by a coal mining company but had not been working for several weeks on account of a broken arm; that Rudge was his foreman while at that work; and that appellant had sought Rudge earlier in the day, with the object of getting back his job.   The prosecution then gave evidence of threats on the same day by appellant to shoot Rudge if he did not get his job back; of two efforts to borrow a revolver, and finally the purchase of one, and within a few minutes thereafter the killing with it.   On this evidence the commonwealth pressed for a verdict of murder of the first degree.

The defense was intoxication, and in support of it testimony was given of the quantity of whisky drunk by appellant on that day and its effect upon him.

This was practically the whole case.   On the undisputed facts it was murder, and the only real issue was the degree of the crime under our statute.

The main burden of the assignments of error is that the judge several times referred to the "admissions of counsel" that defendant was guilty of "at least murder of the second degree;" and a very earnest argument is presented, first that no such admissions were made, secondly, that even if they had been made, the jury could not find a verdict on them but must base it exclusively on the evidence.

The admissions to which the judge referred were admissions of facts from which the law drew the inexorable conclusion of murder.   This is apparent at every point in the charge where reference is made to admissions.   It is perhaps most concisely

expressed in the part complained of in the sixth assignment, "You will perceive that we have that which demands and requires the admission of counsel for the defendant that this man is guilty of at least murder of the second degree." That is, there were the facts proved by the commonwealth, undisputed, conceded, admitted and sworn to by defendant himself from which the law sanctioned but one conclusion, that the prisoner was guilty of at least murder of the second degree. The distinction sought to be set up between an admission of guilt "at least" and "at most" of second degree has no substance. The legal inference from the facts being murder, it must be "at least" of the second degree for that is the lowest grade. The facts as stated by defendant conclusively negatived all idea of manslaughter, and there was no evidence on which counsel could found any claim that the jury had the right (though they might have the power) to render such a verdict. The direction of the bullet was not even a scintilla of evidence of a struggle in opposition to the direct testimony to the contrary by prisoner himself and his victim's wife. The charge of the judge on that subject was a correct statement of the law, and to the extent that it seemed to countenance the possibility of a verdict of manslaughter was more favorable to the prisoner than he could have demanded. It would not have been error to omit it entirely : Com. v. Sheets, 197 Pa. 69. But there being nothing on which a claim for a verdict of manslaughter could be sustained, there could have been no admission "at most" of second degree. That was not a subject of admission by the prisoner or his counsel, because guilt "at most" would be murder of the first degree, for which the commonwealth was contending and which the prisoner was resisting. His admission of the facts therefore was an admission of what the law conclusively said was "at least" murder of the second degree, and the judge was entirely accurate in so describing it.

The second branch of appellant's argument that admissions of counsel, even if made, could not be taken by the jury as the basis of a verdict is not tenable. The facts as already said were not only admitted but proved, but even without this, admissions of fact are evidence. Greenleaf devotes two chapters to this subject : 1 Greenleaf on Evidence, pt. 2, chs. 11, 12. Counsel represent their client and their admissions are prima facie his

admissions. Certainly so even in criminal cases when made in his presence and to the jury. "In trials for felony, admissions of fact which the government is bound to prove are not permitted unless made at the trial in open court by the prisoner or his counsel:" 3 Greenleaf on Evidence, sec. 39.

The cases cited by appellant as to the fixing of the degree of the crime by the jury do not affect this case. In Jones v. Com., 75 Pa. 403, there was a plea of guilty and the court below found the murder to have been of the first degree. This court regarding the proof of premeditation as not beyond reasonable doubt, reduced the judgment to the second decree. In Rhodes v. Com., 48 Pa. 396, and Lane v. Com., 59 Pa. 371, the court gave binding instructions that the verdict must be for first degree or not guilty. There was nothing of the kind in the present case. On the contrary the jury were told in the most explicit terms that there were four verdicts, any one of which they might render, to wit: not guilty, or guilty of manslaughter, of murder of the second degree or of the first degree, and in the choice among these four, they were left entirely free to exercise their own judgment.

Appellant further complains that his sixth, ninth, tenth and eleventh points were affirmed, but with qualifications which lessened their force. There is no merit in this claim. A judge is not bound to charge the jury in the exact language of the point, but may choose his own words, and if the point affirmed without qualification would be likely to give the jury an erroneous impression, it is his duty to add such explanations or qualifications as will correct such tendency. "Points even though taken verbatim from the decisions of this court cannot always be properly answered by a simple affirmation. However accurately and carefully stated in their connection and applied to the case under discussion, they may when taken as detached sentences and applied to different circumstances convey erroneous ideas, especially to unlearned jurors:" Com. v. McManus, 143 Pa. 64. See also Kroegher v. McConway Co., 149 Pa. 444, Walbert v. Trexler, 156 Pa. 112, Cosgrove v. Cummings, 190 Pa. 525, and Carey v. Buckley, 192 Pa. 276. The appellant's points on the subject of intoxication might have tended to lead or confirm the jury in the popular error that a drunken man is not responsible for crime. In view of this tendency the

qualifications added by the judge were entirely correct and appropriate. They put before the jury the exact bearing and limits of the points as rules of law. The threats by the prisoner, his repeatedly seeking the deceased, and his continued drinking up to the killing, were consistent with the view that he had formed the design to kill and was nerving himself up to its execution. This was the claim of the commonwealth, and it was proper that the judge should present it with the others to the jury.

The remaining assignment of error to the admission in rebuttal of the commonwealth's testimony as to the prisoner's condition of sobriety previous to the killing cannot be sustained. The degree of the prisoner's intoxication at the time and shortly previous to the killing was the hinge of the case, and the commonwealth could not be prevented from showing it in her own way, though the defense may have already given the same or closely similar evidence on the same point.

We find no error in the charge. It was a careful presentation of the whole case in its several aspects. It stated the law clearly and accurately in terms tending, it is true, to lead the jury to do their duty in the impartial and unflinching administration of justice, and for that it is to be commended. But it left them distinctly free to exercise all their powers upon their own judgment, and infringed no right nor overlooked any safeguard of the prisoner. The result was not due to the judge but to the relentless logic of the facts.

The judgment is affirmed and the record remitted to the court below for purposes of execution.