Commonwealth *v.* Robinson, Appellant.

Argued September 28, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*William H. Coleman,* for appellant.—There is not in the court's charge any definition of the word "wilful" or the word "deliberate," or the word "premeditated," and the failure to explain the meaning of these words, under the circumstances attending the case at bar, was strongly prejudicial to defendant: Com. v. Drum, 58 Pa. 9; Com. v. Onofri, 18 Phila. 436; Com. v. Morgenthau, 249 Pa. 139.

The failure of the trial judge to explain the meaning of the words "wilful, deliberate and premeditated" and to call attention to the fact that suddenness was opposed to premeditation was error.

When an unlawful killing is proved it will be taken by the jury and the court to be murder of the second and not of the first degree: Com. v. Mika, 171 Pa. 273; O'Mara v. Com., 75 Pa. 424; Com. v. Tompkins, 267 Pa. 541; Com. v. Drum, 58 Pa. 9; Com. v. Morrison, 193 Pa. 613.

*John F. Haggerty,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, November 23, 1931:

William Robinson, colored, aged twenty-one years, was tried for the murder on June 7, 1930, of his wife,

aged nineteen years, and the jury found him guilty of murder of the first degree and fixed his punishment as life imprisonment. During their married life of nine months they quarreled frequently. They separated on March 21, 1930. The wife remained with her parents. The defendant lodged with another colored man a short distance away. There was evidence that the defendant on several occasions threatened to kill his wife.

Shortly before the homicide the defendant purchased a revolver. The man with whom the defendant lodged removed the cartridges from the revolver and placed the revolver in a dresser drawer. The night before the homicide the defendant called his wife on the telephone. The wife's mother informed him that her daughter was out for the night. She then notified her daughter that the defendant had called and wished to see her. The following forenoon the wife went to her husband's room and found her husband and the other lodger in bed. The lodger got up and dressed and left the defendant and his wife alone. Some time before the wife came to the defendant's room the defendant had reloaded the revolver and placed it in the dresser drawer. When the deceased was in the defendant's room and before the other lodger had left, the relations between her and her husband appeared friendly. What occurred in the room when the defendant and his wife were alone is known only to the survivor. According to his testimony, no altercation took place between them. He said his wife went through the drawer of the "chifferobe," and he explained that "she did that every time she came over because every job I was on I found novelties and she would look to see if I had anything." In the course of her exploration, so he testified, she pulled out the right hand dresser drawer and picked up the gun and said, "I am going to keep this little gun," and he said, "No, you ain't." She put it in her coat and started out of the room. He said she went to the door and he called her back into the room and she had the gun in her

hand and pulled the trigger. He told her to "put it away quick, that it was loaded"; then he tried to take it from her. He said it had a hair trigger and the slightest little jar would make it go off. In the tussle for the gun he said he felt himself slipping off the bed and his arm running down her arm, and he let go of her arm and grabbed the bed and the gun went off. He said at no time did he have hold of the revolver. After the gun was discharged Mrs. Robinson fell backward against the door, dropping the gun on the top of the dresser, where it was later found. An autopsy revealed that the bullet entered her body at a point four inches above and one inch to the left of the left nipple, and the bullet took a downward and backward course, passing through one of the ventricles of the heart, causing instant death. There were no powder marks, burns or smudges on the clothing or body of the deceased, while the ballistic expert testified that such smudges and burns would be present if the muzzle of the revolver was less than twenty-one inches from the body when fired. All this happened between eleven and twelve o'clock in the morning. About 2:30 P. M., the deceased's brother, who had been looking for the defendant, found him at a carnival ground and said, "You shot my sister." To this accusation the defendant made no immediate reply, but after walking about fifty feet, asked, "Is she dead?" His defense was that the fatal wound was accidently self-inflicted by his wife. This defense the jury rejected.

The proposition on which the appellant chiefly relies for a new trial in this case is that the trial judge committed reversible error in failing to charge that even though the Commonwealth proved the commission of murder in this case the presumption was that the murder was murder of the second degree and the burden was upon the Commonwealth to offer proof raising the crime to first degree.

It is the long-established law of Pennsylvania that in a case of felonious homicide if the Commonwealth proves only a malicious killing it is the duty of the jury to find the defendant guilty of no higher degree of crime than murder of the second degree. By long usage it has been customary to charge the jury on this point substantially as follows: "If you find a wilful, unlawful killing of a human being, the law presumes that that killing is malicious, that it is murder and not manslaughter. This presumption however goes only as high as murder of the second degree. The burden is upon the Commonwealth to raise it from the second degree to the first degree by proof beyond a reasonable doubt of the specific intent in the mind of the defendant to take life": Com. v. McMurray, 198 Pa. 51; Com. v. Van Horn, 188 Pa. 143.

Justice AGNEW in his oft-quoted opinion in Com. v. Drum, 58 Pa. 9, 17, expresses this idea in this language: "The presumption against [the defendant] rises no higher than murder in the second degree......It therefore lies on the Commonwealth to satisfy the jury of those facts and circumstances which indicate the deliberate intention to kill and the cool depravity of heart and conscious purpose which constitute the crime of murder in the first degree." See also Com. v. Morrison, 193 Pa. 613.

The important thing to be considered in examining the charge of a trial judge is the idea of the law which its language conveys to the jury rather than the form of words and phrases used in conveying it. Charging a jury in Pennsylvania has not yet become merely a matter of remembering and repeating stereotyped (even if time-honored) phrases. The trial judge must be allowed some latitude of expression. The function of a charge is to instruct the jury accurately as to the law and to clarify the issues of fact. This duty the trial judge in the case at bar fully performed. When he concluded his charge no attentive juror should have had any doubt as to the burden which rested upon the

Commonwealth. This is proved by the following excerpts from the charge: "You must be satisfied beyond a reasonable doubt, growing out of the evidence, of the existence of each and every element of the crime of which you convict......The legislature of our state, considering that there is a distinction in the degrees of guilt in murders, where a specific intent to take life existed at the time the murder was committed and where no such intention did exist, but where the person doing the killing only intended to do grievous bodily harm, and the injury resulted in death, divided the crime of murder into two degrees, murder of the first degree and murder of the second degree, and it is for the jury to say in their finding, if they find the defendant guilty of murder, of which degree of murder he is guilty......The Commonwealth contends in this case that on the 7th day of June of this year, the defendant, William Robinson, did feloniously and intentionally, unlawfully, premeditatedly and with malice aforethought, kill and murder Loraine Robinson. That is the contention of the Commonwealth......The ingredients or elements of murder in the first degree are that the killing must have been unlawful, wilful, deliberate and premeditated, and with malice aforethought. Those elements are necessary to constitute the crime of murder in the first degree, and it must include also another element, namely, that the defendant at the time of firing the fatal shot, if you find he did, not only did it wilfully and deliberately and intentionally and with malice aforethought, but he, at the time, intended to take the life of Loraine Robinson......Murder in the second degree contains each and every element of murder in the first degree, except and save only the specific intent to take life. The distinguishing criterion between murder of the first degree and murder in the second degree, you will understand, is that in murder of the first degree there is the intent to take life while in murder of the second degree there is no intent to

take life, but the intent is only to inflict grievous bodily harm......If it [i. e., the shooting] was done wilfully, maliciously and premeditatedly, but without the specific intent to take life, it would be murder in the second degree."

The jury having thus been plainly told that the distinguishing characteristic of murder of the first degree is the specific intent to take life, nothing vital would have been added to the instructions by the repetition of the formula that every unlawful and malicious killing is presumed to be murder, but not of the first degree. Indeed, it is doubtful whether this use of the word "presumed" conveys much meaning to the minds of jurors unless it is explained. The trial judge's instructions in varying forms, that before the jury could find the defendant guilty of murder of the first degree, it must find beyond a reasonable doubt that the defendant had a specific intent to take life, met all the requirements of the law. In the first part of the charge the trial judge correctly instructed the jury that the burden of proof rested on the Commonwealth. The fifth assignment of error is overruled.

The third assignment of error is based upon the failure of the trial judge to instruct the jury as to the meaning of the words "wilful, deliberate and premeditated." While ordinarily trial judges do define these words to jurors in language similar to or substantially similar to the language used by Justice AGNEW in Commonwealth v. Drum, supra, to wit, "If an intention to kill exists, it is wilful; if this intention be accompanied by such circumstances as evidence a mind fully conscious of its own purpose and design, it is deliberate; and if sufficient time be afforded to enable the mind fully to frame the design to kill, and to select the instrument, or to frame the plan to carry this design into execution, it is premeditated," it is not certain that these formal definitions add much to the words' own self-definings. The word "wilful" is a word in

common usage, and its meaning is not unknown to the average juror. The words "deliberate and premeditated" while somewhat lengthy and formidable in appearance, are also not unknown to the vocabulary of the average juror. We see no merit in the third assignment of error.

The fourth assignment of error is the following excerpt from the charge of the court: "While we have defined to you the crime of voluntary manslaughter, we say to you, members of the jury, as we view the case, there is no evidence in it that would warrant a verdict of voluntary manslaughter, although, in the absence of evidence, it is within your power to render such a verdict, because, in the crime of murder, the jury always has the right to fix the degree of the homicide." There is no error in this instruction. There was no evidence in this case on which a verdict of voluntary manslaughter could logically be based. As this court, speaking through Mr. Justice MITCHELL, said in Com. v. McMurray, supra, "The facts as stated by defendant conclusively negatived all idea of manslaughter, and there was no evidence on which counsel could found any claim that the jury had the right (though they might have the power) to render such a verdict......The charge of the judge on that subject was a correct statement of the law, and to the extent that it seemed to countenance, the possibility of a verdict of manslaughter was more favorable to the prisoner than he could have demanded." The court added to the excerpt which constitutes the fourth assignment of error the following: "If they [the jury] find the defendant is guilty, they always have the right to fix it at voluntary manslaughter, if they find that is the proper verdict." The court then correctly defined voluntary manslaughter. Under the charge of the court in this case, the jury were at liberty to return one of four possible verdicts, guilty of murder of the first degree, guilty of murder of the

second degree, guilty of voluntary manslaughter, or not guilty. The fourth assignment of error is overruled.

There was but one issue in this case, and that was whether or not the fatal wound was accidently self-inflicted or was inflicted by the defendant. If he inflicted it, as the jury found, there was ample warrant for the verdict of murder of the first degree. It is the law of this State that the intentional, unlawful and fatal use of a deadly weapon against a vital part of the body gives rise to the presumption of fact that malice and intent to kill existed: Com. v. Troup, 302 Pa. 246.

All the assignments of error are overruled. The judgment of the court below is affirmed, the record to be remitted in order that the sentence may be carried out.