## Commonwealth *v.* Cargill, Appellant.

Argued September 29, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Albert Martin,* for appellant.

*William H. Colvin,* Assistant District Attorney, with him *Artemas C. Leslie,* District Attorney, and *Louis L. Kaufman,* for appellee.

OPINION BY MR. JUSTICE DREW, November 10, 1947:

James Cargill, defendant, was indicted and tried for the murder of Fred Squires in Allegheny County. The jury returned a verdict of guilty in the first degree and fixed the penalty at life imprisonment. The learned court below overruled defendant's motion for a new trial and imposed the sentence fixed by the jury. This appeal followed assigning as error the refusal of a new trial.

There is little if any excuse for this appeal. Defendant freely admitted an intentional homicide and attempted to justify his act by pleading self-defense. The jury found his act was malicious as well as intentional, and properly found him guilty of murder of the first degree. The penalty was fixed at life imprisonment instead of death, probably because of the bad reputation of the deceased, who had already killed a man and was known generally as a bad character.

The essential facts are briefly these: On February 12, 1946, at about two-thirty o'clock A. M., Fred Squires was killed by two gun shot wounds in the head. At trial defendant admitted that the fatal bullets were fired by him at very close range from a .38 caliber Colt revolver. He also conceded that the shooting was intentional. He denied, however, that the homocide was malicious as claimed by the Commonwealth, but argued that he acted in self-defense.

Squires, the deceased, had operated a gambling house in the Borough of Homestead, Allegheny County, and

defendant had lost heavily there at a dice game during the two days immediately preceding the killing. Defendant testified he went to the gambling house that night and was discussing with Squires the money he had lost when Squires suddenly jumped up from his chair with his hand on his gun. Defendant testified that he began shooting immediately because he knew Squires had a gun and he was afraid of him because of his bad reputation. The jury rejected this defense. The evidence unquestionably discloses adequate basis for the verdict of murder in the first degree.

Having failed to prove his defense the defendant seeks rescue in an alleged failure of the learned trial court in its charge to define reasonable doubt and voluntary manslaughter adequately and accurately. There is no merit in either assignment.

Counsel for defendant contends that the charge failed to explain either "the state of mind that must exist in order to warrant a conviction or the degree of doubt that should lead to an acquittal". Our examination of the charge refutes completely this argument. The jury was instructed concerning reasonable doubt in language substantially similar to that of Mr. Justice AGNEW in *Commonwealth v. Drum,* 58 Pa. 9, 22. It would be the idlest kind of repetition to here again set it forth since that entire charge has been cited again and again by this Court with approval.

The second assignment of error alleges that the trial court erred in its definition of voluntary manslaughter. Objection is specifically directed to the italicized language contained in the following excerpt from the charge: "Now, as I have stated to you, you may find the defendant guilty of Voluntary Manslaughter. Voluntary Manslaughter is where injuries are inflicted unlawfully, and *sometimes* intentionally, under the influence of passion but without any legal malice, and death result. In other words, it is where the killing occurs, and *it may even be intentionally done,* but where

the killing is done in the heat of passion to such an extent that it blots out from the mind of the perpetrator the cool frame of mind or depravity of heart which we call 'malice' and suddenly impels him to do the deed under the influence of this passion. . . . That is, the unlawfully taking of human life *sometimes intentionally* but where it is done under the influence of passion existing in the mind of the person, affected to such an extent that it blots out the cool depravity of heart and the hardness of heart which we call 'malice' and suddenly impels him to do the deed. If the killing occurred under such circumstances, then the killing would be voluntary manslaughter and your verdict would be in that form." (Italics supplied by defendant.)

We said in *Commonwealth v. Colandro,* 231 Pa. 343, 350, 80 A. 571: " 'Voluntary manslaughter is a homicide intentionally committed under the influence of passion' ". The use of the word and phrases italicized above in the definition of the learned trial judge was at most, under the facts of this case, harmless error. We have frequently held that a charge must be considered in its entirety and that reversible error cannot be predicated on certain isolated excerpts: *Commonwealth v. Moyer,* 357 Pa. 181, 187, 53 A. 2d 736. Considering the charge in its entirety the jury was clearly and fully instructed as to voluntary manslaughter. It must have understood the vital difference between that degree of homicide and first degree murder; that in the former there must be heat of passion and in the latter the cool depravity and hardness of heart which in law is called malice. Having been fully charged, the important question for the jury was whether this admittedly intentional killing was done in malice, heat of passion or in self-defense. The verdict of guilty of first degree murder was a clear and unequivocal answer to that question.

Judgment affirmed and record remitted to the court below so that the sentence imposed may be carried out.