## Commonwealth *v.* Pavillard, Appellant.

Argued April 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

John J. Duffy, with him Lentz, Cantor, Kilgore & Duffy, for appellant.

John S. Halsted, Assistant District Attorney, with him A. Alfred Delduco, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 24, 1966:

On September 16, 1964, Henry Francis Pavillard was indicted for the murder of his sister-in-law, Doris F. Pavillard.* On February 17, 1965, the jury returned a verdict of guilty of murder in the second degree. Defendant moved for a new trial which was denied by the lower Court, and the Court imposed a judgment of sentence of not less than five nor more than ten years, plus a fine. From this judgment of sentence defendant appeals to this Court alleging certain errors in the charge of the lower Court.

The evidence introduced at trial showed that on June 7, 1964, a witness, Mrs. Ann Hanft, observed the defendant driving around in his car with a female companion in the seat next to him, whom he seemed to be holding by the hair. Mrs. Hanft later observing the defendant parked by the side of the road, asked him whether he needed medical help for his companion. Defendant replied that he had a very sick woman and that medical help was certainly needed. Mrs. Hanft led the defendant to the office of Doctor Neilson Matthews and the woman, later identified as Doris, was carried into the doctor's house. Doctor Matthews testified that when he examined Doris she was already dead, and told defendant that there was nothing he could do for her. Doctor Matthews testified that while waiting for the police to arrive, defendant told him that Doris had either been playing with or han-

---

* Hereinafter referred to as Doris.

dling the gun and that it went off. It was later discovered that Doris was dead as the result of a bullet wound in the back of her neck.

A 22-caliber pistol was found in defendant's car under the front seat on his, the driver's, side. Defendant later stated to the police that Doris shot herself in the back of the neck and that the gun went off, but that he didn't know what had happened. In a subsequent statement, which he made to the police, which was transcribed but not signed, he changed the version somewhat and stated that as he was driving he saw Doris raise the gun, he thought in his direction, and as he reached for it a struggle ensued and she shot herself. This statement was later introduced at the trial by the District Attorney.

At his murder trial, defendant took the stand in his own defense and *testified* that parts of his previous statements to the police were not accurate, and, more particularly, he denied that he had grabbed the gun and denied that he had any knowledge of the shooting until he first heard the shot. Finally, the defendant produced evidence that on at least three prior occasions Doris had unsuccessfully attempted suicide.

On the basis of all the above-mentioned evidence the trial Judge charged the jury on the law of **murder in** the first and second degrees and also the law with respect to suicide. The jury, after deliberating the issue, returned a verdict, we repeat, of guilty of murder in the second degree.

In this appeal defendant contends that it was error (1) not to charge the jury on the law regarding homicide by misadventure (mistake), and (2) not to charge the jury on the law with respect to voluntary manslaughter.

As to the first alleged error, homicide by misadventure or mistake involves a homicide, i.e., a killing of one person by another by accident and unaccom-

panied by any unlawful conduct. *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632, defines homicide by misadventure (pages 156-157) : "Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. 'Three elements enter into the defense of excusable homicide by misadventure : [1] The act resulting in death must be a lawful one; [2] It must be done with reasonable care and due regard for the lives and persons of others; and [3] the killing must be accidental and not intentional, or without unlawful intent, or without evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state, or unlawfully striking another with an intent to hurt, although not with an intent to kill, or driving an automobile at an unlawful rate of speed' : 30 C. J., page 87, sec. 269."

In the present case, defendant steadfastly denied in his testimony that any homicide, i.e., a killing of one person by another, had occurred. On the contrary, defendant's testimony as to Doris's death, if believed, would establish that Doris committed suicide. The Commonwealth's evidence, if believed, shows either murder or suicide. Therefore, the issue of homicide by misadventure was not injected into this case at the trial by either the Commonwealth or the defendant. That being so, the failure to charge upon the subject was not error. Furthermore, to pile Pelion upon Ossa, defendant took no exception to the charge and did not request the Court to charge on a killing by misadventure.

Defendant's second allegation of an error in the Court's charge raises a serious problem. The problem, concisely stated, is whether the trial Court, in a murder case, must charge on the issue of voluntary manslaughter where no proof of a killing under the influence of legal passion or provocation exists.

In *Commonwealth v. Nelson*, 396 Pa. 359, 364, 152 A. 2d 913, the Court, citing many authorities, thus defined voluntary manslaughter (page 364) : "In Commonwealth v. Donough, 377 Pa., supra, the Court quoting from Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540, said (page 52) : ' " 'Voluntary manslaughter is a homicide intentionally committed under the influence of passion.' Commonwealth v. Colandro, 231 Pa. 343, 350, 80 A. 571 (1911) ; Commonwealth v. Cargill, 357 Pa. 510, 513, 55 A. 2d 373 (1947) . . .'"

" 'In Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571, the Court said (page 350) : . . . " 'The term "passion" as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected:' 21 Am. & Eng. Ency. of Law (2d ed.) 173. 'Passion, as used in a charge defining manslaughter . . . means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection'; 6 Words & Phrases, p. 5227." ' "

In the instant case there was absolutely no evidence of legal passion or provocation such as to reduce the crime from murder to voluntary manslaughter. That being so, this Court has consistently and wisely held that the trial Judge is not required to charge the jury on the issue of voluntary manslaughter. *Commonwealth v. LaRue*, 381 Pa. 113, 112 A. 2d 362; *Commonwealth v. Yeager*, 329 Pa. 81, 196 Atl. 827; *Commonwealth v. Miller*, 313 Pa. 567, 569, 170 Atl. 128. A charge on a point or issue which is unsupported by

any evidence is likely to confuse the jury and obstruct Justice.

In *Commonwealth v. LaRue*, 381 Pa., supra, in a case very similar to the one at bar, the Court said (pages 121-122) : "Failure of the trial Judge to submit to the jury voluntary manslaughter as a possible verdict was not error. Where there is some evidence which would reduce the crime to voluntary manslaughter, defendant is entitled to have the jury instructed upon the subject: Commonwealth v. Flax, 331 Pa. 145, 200 A. 632. But where there is no evidence of manslaughter, it is proper for the court to refuse to submit to the jury the issue of manslaughter. In Commonwealth v. Yeager, 329 Pa. 81, 85, 196 A. 827, Justice (later Chief Justice) MAXEY said: 'It is well settled that on a trial for murder where there is no evidence which in the remotest degree points to the offense of manslaughter, the court commits no error in instructing the jury that a verdict of guilty of manslaughter would not be warranted. See Com. v. Carroll, 326 Pa. 135, 191 A. 610; Com. v. Crossmire, 156 Pa. 304, 27 A. 40, and Com. v. Buccieri, 153 Pa. 535, 26 A. 228.' "

We find no reason in this case to depart from that rule. We further note that in this case defendant presented no point for charge on the subject of voluntary manslaughter and took no exception to the Court's charge. Although not cited or referred to by any of the parties, we have considered and find nothing inconsistent with that rule in the recent case of *Commonwealth v. Frazier*, 420 Pa. 209, 216 A. 2d 337, nor the line of cases upon which *Frazier* relies,[*] which

---

[*] *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A. 2d 369; *Commonwealth v. Nelson*, 396 Pa., supra; *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A. 2d 825; *Commonwealth v. Arcuroso*, 283 Pa. 84, 87, 128 Atl. 668; and *Commonwealth v. Kellyon*, 278 Pa. 59, 122 Atl. 166.

hold (for reasons therein set forth) that a jury may find a defendant who under the evidence of the Commonwealth has committed the crime of murder, guilty of voluntary manslaughter even in the absence of legal passion or provocation.

Judgment of sentence affirmed.

DISSENTING OPINION BY MR. JUSTICE COHEN:

Defendant was tried under an indictment for murder. Under such an indictment, it is error for the trial judge not to give a charge on voluntary manslaughter.

It has long been the law of Pennsylvania that even if there is no evidence of manslaughter, the jury may award such a verdict. In *Commonwealth v. McMurray*, 198 Pa. 51, 47 Atl. 952 (1901), we said at page 60: "The facts as stated by defendant conclusively negatived all idea of manslaughter, and there was no evidence on which counsel could found any claim that the jury had the right (*though they might have the power*) to render such a verdict." (Emphasis supplied).

How is a jury able to exercise its power when it is never advised that it has such power? While it is true that this Court has said that where there is no evidence whatever of manslaughter it need not be charged (*Commonwealth v. McMurray*, supra), that rule has led to an arbitrary justice where there is a murder indictment without facts showing manslaughter, since trial judges have capriciously chosen to charge the doctrine or not. Compare *Commonwealth v. Yeager*, 329 Pa. 81, 196 Atl. 827 (1938) with *Commonwealth v. Robinson*, 305 Pa. 302, 157 Atl. 689 (1931). In the latter case, this Court found no error in a charge which told the jury (1) the elements of manslaughter, (2) that there was no evidence of the crime, and (3) that they still had it in their power to

find manslaughter. Such a charge ought to have been included here.

There is another reason why a new trial ought to be given in this case. Our recent decisions in *Commonwealth v. Frazier* (411 Pa. 195, 191 A. 2d 369 (1963) and 420 Pa. 209, 216 A. 2d 337 (1966)) have had the effect of making voluntary manslaughter a lesser offense to murder. In *Frazier* I, defendant was tried on an indictment of murder and convicted of voluntary manslaughter even though the evidence showed murder and did not show manslaughter. As a result of trial error judgment was reversed and a new trial was awarded. Having been acquitted of murder, Frazier was indicted for manslaughter. At trial he demurred to the evidence, saying that the facts did not make out the crime of manslaughter. This Court, in *Frazier* II, reversed the grant of the demurrer by the lower court and held that one may be indicted for manslaughter and convicted of voluntary manslaughter even though the evidence shows murder and does not show manslaughter. Consequently, one may be convicted of voluntary manslaughter on evidence of murder only, on either an indictment for manslaughter or for murder. Since only the indictment differs the one crime must be included within the other.

One set of facts will permit a conviction of murder or manslaughter on a murder indictment. The difference, therefore, is a matter of degree, and "the jury has the *exclusive* right to fix the degree of guilt. . . ." *Commonwealth v. Meas,* 415 Pa. 41, 45, 202 A. 2d 74, 76 (1964).

Finally, defendant argues that there was evidence which could properly be relied on by a jury to find voluntary manslaughter. One of defendant's statements to the police, introduced to impeach him, recounted that defendant saw the victim raise the gun, that he grabbed at it, and that the shooting occurred during

the struggle for the weapon. In *Commonwealth v. Banks*, 376 Pa. 531, 103 A. 2d 726 (1954), we said at page 534: "The jurors are not bound to accept the version of the Commonwealth nor that of the defendant, but must consider all the testimony and make up their minds as to what was the true situation." I think that on these facts and on the law just stated, the charge on voluntary manslaughter was improperly withheld. This is particularly true since we have said: "[A] trial judge is not required to charge the jury on manslaughter where there is nothing in the testimony to reduce the grade of the crime below murder . . . *it is only in very clear cases, where there is no room for doubt, that this can properly be done* [citing cases]." (Emphasis supplied). *Commonwealth v. Miller*, 313 Pa. 567, 569, 170 Atl. 128 (1934).

Hence, the fair and proper administration of criminal justice requires that in every murder trial the jury be charged on the elements of voluntary manslaughter. The jury ought to be made fully aware of all the verdicts that it has the power and, indeed, the right to return.

I dissent.

Mr. Justice JONES joins in this dissenting opinion.