**J. Dwight BAIRD**

v.

**ALUMINUM SEAL CO., Inc.**

**Civ. A. 289.**

United States District Court
W. D. Pennsylvania.

Nov. 28, 1956.

See also 117 F.Supp. 492.

Maurice J. Coughlin, William W. Knox, Erie, Pa., for plaintiff.

Frank Seamans, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

In this case there is now pending a motion for a new trial only. In his complaint plaintiff charged that the defendant did willfully, wantonly, wrongfully, maliciously and without proper cause enter judgment on certain notes in the office of the Prothonotary, Erie County, Pennsylvania in this judicial district. The case was tried to a jury over a period of six trial days. It was a vigorously tried case in which each side was represented by able, experienced counsel. It is noticed that plaintiff in his brief on his motion for a new trial characterizes the suit as one for damages for malicious use of process and malicious abuse of process. Defendant in its brief says the case is a civil suit to recover damages for an alleged malicious prosecution consisting of the entry of a judgment on judgment notes in the Court of Common Pleas of Erie County, Pennsylvania, on March 22, 1949, in the amount of $26,250, etc. It is my view that the cause of action described in plaintiff's complaint and which was litigated in the trial is an action for malicious use of civil process. It had to do with the initiation of proceedings and not the perversion of them.

In Publix Drug Co. v. Breyer Ice Cream Co., 347 Pa. 346, 32 A.2d 413, the defendant had entered judgment by confession on judgment notes as was done by the instant defendant. The Supreme Court of Pennsylvania held that the action before it was one for malicious use of civil process and said, in part:

"* * * It was essential in this case that plaintiff should show that the judgments were entered with malice, without probable cause to believe that the defendant could succeed and that the original actions finally ended in failure."

As this is a diversity action, this court is required to apply the law of Pennsylvania. As trial judge, believing that the law on the instant case was as pronounced in the Publix Drug Co. v. Breyer Ice Cream Co. case, an interrogatory was submitted to the jury as follows:

"1. Was the Aluminum Seal Company, Inc. motivated by malice in entering the notes as judgment liens in the Prothonotary's office of Erie County, Pennsylvania?"

The jury's answer to the interrogatory was "No," and it returned a general verdict for the defendant. Plaintiff has moved for a new trial, assigning various

reasons, all of which have been examined and considered. Counsel for each of the parties have been heard at oral argument and briefs have been filed. The motion for a new trial will be refused.

This motion to set aside the verdict and grant a new trial is a matter of federal procedure, governed by Fed.Rules Civ.Proc. rule 59, 28 U.S.C. It is not subject in any way to the rules of state practice. " * * * On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352. The motion for a new trial is addressed to the sound discretion of the court. It is my view that the weight of the credible evidence in this case favors the defendant. As I am required to do, I have reviewed the evidence to determine whether in the light of the weight of the evidence a new trial should be granted. It is my belief that the jury's verdict on the issue of malice was correct under the evidence and that the verdict should stand. See Magee v. General Motors Corp., 3 Cir., 213 F.2d 899. See also Barron & Holtzhoff, Federal Practice, Volume 3, Section 1302.

It is necessary that the facts be briefly discussed in order that this court's reasons for refusing the motion for a new trial be clearly understood. There is no substantial dispute on the essential facts which gave rise to the suit by plaintiff. The suit was brought against Aluminum Seal Company, Inc., an Indiana corporation. This corporation was the successor to the rights and liabilities of Aluminum Seal Company, a Pennsylvania corporation, which originally contracted with the plaintiff. Those two corporations have been dissolved and their assets are now owned by the Aluminum Company of America. The three corporations will be mentioned and referred to simply as "defendant." The transaction between the parties which was the forerunner of the present litigation can be briefly summarized. In 1947, defendant needed housing facilities for its employees which it was to transfer to a new manufacturing plant situate in the City of Richmond, State of Indiana. The parties entered into two written contracts, both dated May 14, 1947. The first provided for the construction of thirty-five houses called the "Homesite." In this agreement plaintiff agreed to build thirty-five dwelling houses and have them ready for occupancy within one year from the date of the agreement. Time was stated to be the essence of the agreement. Defendant had a preference in placing its employees in the dwelling houses as tenants under plaintiff. The houses and building project were to continue to be owned by plaintiff and for a period of five years plaintiff could neither assign the contract nor convey the Homesite without the prior written consent of the defendant. Construction was to begin by July 1, 1947. As a subsidy, defendant agreed to pay plaintiff $25,000, which money, however, was to be held in escrow at the National Bank and Trust Company of Erie, Pennsylvania, and disbursed by the bank in accordance with the terms of the escrow agreement. The escrow agreement was a three-party contract between the National Bank and Trust Company of Erie, plaintiff and defendant. In it the bank held the $25,000 paid by defendant. As the building project progressed, plaintiff was privileged to draw on the $25,000 subsidy. When he did so he was required to deposit with the bank notes in an amount equal to his withdrawal, which notes were held by the bank as security for his performance. Under this agreement plaintiff withdrew $5,000 immediately and gave his note. Ten thousand dollars was to be paid plaintiff upon presentation of a certificate for recording of the deed of the building project "Homesite." Five thousand dollars was to be paid to plaintiff upon presentation to the bank of the certificate of final approval of

completion of the Federal Housing Administration for eighteen houses upon the Homesite. The remaining $5,000 was to be paid plaintiff upon presentation to the bank by plaintiff within one year of the date of the agreement of the certificate of final approval of completion of the thirty-five houses by the Federal Housing Administration, and upon the certificate of final approval being issued, the bank was to deliver to plaintiff all his promissory notes theretofore received by the bank under the escrow agreement. The agreement provided that if within one year from its date plaintiff did not present to the bank the certificate of final approval of completion of the Federal Housing Administration of the thirty-five houses, the bank was to then forthwith pay to the company any balance of said sum of $25,000 then held by it and deliver to the company all the promissory notes theretofore received by the bank. Thereafter and by mutual agreement the subsidy was increased from $25,000 to $35,000 and the period for compliance was extended from May 14, 1948 to August 12, 1948. The evidence showed that during the course of construction, financial aid was afforded to the plaintiff by the defendant in addition to the subsidy. For instance, on September 8, 1947, defendant advanced $50,000 to plaintiff. On December 19, 1947, defendant loaned an additional $25,000 to plaintiff. On February 24, 1948, defendant consented to a payment of $5,000 from the escrow fund at a time when plaintiff was not entitled to receive it under the terms of the agreement.

On February 26, 1948, defendant loaned $65,000 to the plaintiff for use in the Richmond project, which loan was secured by a second mortgage on four Erie apartment houses. On June 18, 1948, defendant authorized the escrow agent to release $5,000 of the escrow funds to the plaintiff. By August 12, 1948, plaintiff had received from the escrow agent a total of $35,000, as provided for in the escrow agreement, and had delivered to the bank in return notes totaling $35,000, payable to defendant. Of the notes, $25,000 were promissory notes containing warrants of attorney for confession of judgment and one note in the sum of $10,000 was without such authority. On the compliance date, as extended, that is August 12, 1948, the plaintiff had not secured the F.H.A. certificates. Defendant waited until November 12, 1948 and then demanded of the escrow bank delivery of all plaintiff's notes and the escrow bank did deliver the notes to the defendant.

Up to this point in the transaction, the evidence shows no substantial dispute between the parties. Although the F.H.A. certificates were not furnished, the building project was substantially completed by plaintiff. However, the evidence does show that during this period plaintiff needed additional finances, particularly for various other business enterprises. The evidence shows also that some of the moneys which plaintiff received from defendant for use in the Richmond project were diverted to other enterprises. During the fall of 1948, plaintiff and the president of the Aluminum Seal Company, Inc., M. M. Kipfer, had disagreed on various matters connected with the project, particularly rentals. About October 1, 1948, plaintiff testified that Mr. Kipfer said to him: "You will be sorry for this day. We will get you, we'll get you good. You are through, you're done."

By June 21, 1948, defendant had advanced the plaintiff $125,250 for use in the housing project. This sum was made up of the $35,000 escrow fund, $65,000 mortgage loan and further advances of $25,250, which latter amount, however, was secured by assignments of moneys due plaintiff under the mortgage arrangement he had with the Prudential Insurance Company, which was financing the housing project known as Homesite. In August of 1948, payments of interest on the $65,000 mortgage became overdue and were unpaid by plaintiff. In November of 1948, plaintiff and Mr. C. L. Lycette, Assistant Secretary of defendant, had discussed plaintiff's financial

difficulties and problems. Mr. Lycette made a suggestion as to settlement of all of the business between the parties, but on November 8, 1948, plaintiff rejected Mr. Lycette's offer. Afterward the parties held conferences in Pittsburgh on January 6 and January 17, 1949, in an effort to find a solution to the obligations outstanding in the entire matter. Particularly, however, at the latter time, plaintiff informed Mr. Lycette of the fact that he would be unable to meet a $5,000 payment on the $65,000 mortgage principal, nor an interest payment in the amount of $975, both of which would become due in February. At that time plaintiff demanded the return of the escrow notes from Mr. Lycette. At the latter conference, plaintiff informed defendant that the first mortgage held by C. W. Zuck & Sons on the apartments in Erie was also in default and that there was due on the first mortgage the sum of $83,400. At that meeting also, plaintiff informed defendant that suit had been entered in Indiana by Fox Bros. Manufacturing Company and The Celotex Corporation to recover $17,500 still due for materials furnished the housing project at Richmond. In the meantime, plaintiff had placed a second mortgage in the sum of $38,000 on the Richmond Homesite.

During the course of the transactions defendant was represented by William J. Kyle, Jr., a member of the law firm of Smith, Buchanan, Ingersoll, Rodewald & Eckert, Esqs. He consulted with Mr. Lycette, Assistant Secretary of defendant, in 1947 and 1948 with regard to the housing project. In November of 1948, Mr. Kyle conferred with Mr. Lycette relative to whether defendant was entitled to return of the notes from the escrow bank. In the latter part of January of 1949, Mr. Lycette summarized the transactions up to that time in a letter to Mr. Kyle. Mr. Kyle testified in response to a question relating to the contents of the letter of January 21, 1949, as follows:

"Q. Now, what was the question posed to you by your client Alcoa?

What was the problem? What was the job you were given?

"A. The job was to determine and recommend to them the best remedies available to them for the collection of the hundred thousand dollars which in our opinion Mr. Baird owed to them, and at the same time, if possible, to collect as much as we could on the hundred thousand dollars and retain the benefits of that rent preference agreement which the company had made initially—in other words, if possible, to see that their employees would continue to have a place to live at Richmond, where they had just built a new plant."

In the latter part of February, 1949, Mr. Kyle contacted Jacob B. Held, Esq., an attorney at Erie, and forwarded him various papers in the case. On February 17, 1949, Maurice J. Coughlin, Esq., attorney at Erie representing plaintiff, wrote defendant concerning the Baird matters, suggesting an amicable adjustment might be reached providing a conference could be arranged. Mr. Kyle and Mr. Held concluded that defendant should enter judgment on the $25,000 in judgment notes in Erie County. It developed that about February 18, 1949, plaintiff Baird had transferred his Erie properties other than the ones on which defendant had a second mortgage to himself and his wife as tenants by entireties. Messrs. Coughlin and Held had discussed the decision of the defendant to enter the judgment notes. Mr. Coughlin informed Mr. Held that in his opinion defendant was not entitled to enter the notes as judgment liens against Baird. There was some delay by defendant in entering the notes because Messrs. Kyle and Held wanted to give Mr. Baird time to propose a settlement of the differences between the parties. However, on March 22, 1949, the notes were entered as a judgment.

On March 25, 1949, a rule to show cause why the judgment should not be opened was granted by the Common Pleas Court of Erie County. On July

14, 1950, Judge Evans of the Court of Common Pleas of Erie County made absolute the rule to open the judgment and an issue of fact was awarded. On January 5, 1952, defendant filed a praecipe to discontinue in the county court case. However, the judgment remained on the record and on March 2, 1953, the judgment was stricken from the record upon motion of plaintiff with the consent of the defendant.

On April 1, 1949, after the entry of the judgment in Erie, suit was brought by the defendant against the plaintiff and his wife on the remaining $10,000 promissory note in the Circuit Court of Wayne County, Indiana. The case was tried to the court without a jury and Judge Hoelscher filed an adjudication on February 16, 1951, entering judgment in favor of defendant against the plaintiff in the amount of $10,000. On appeal, however, that judgment was reversed by a higher Indiana court. In December of 1948, as previously mentioned, Fox Bros. Manufacturing Company and The Celotex Corporation, materialmen who had furnished mill work and exterior paneling for the project at Homesite entered suit in the amount of $17,500 and obtained judgments against plaintiff as the result of a stipulation by plaintiff. In connection with these actions the court issued attachments which became liens against the Homesite property. On June 6, 1949, the Homesite property at Richmond was sold by the Sheriff of Wayne County, Indiana on the Fox Bros. and Celotex judgments. Defendant here purchased the properties at the sale. After the sheriff's sale, the various attorneys and defendant's representatives held a meeting. Afterward, on June 10, 1949, Mr. Lycette wrote to Charles Livengood, Esq., attorney of Richmond, who represented Fox Bros. and Celotex. This letter is Exhibit 84 and is copied in full in the margin.*

In the letter Mr. Lycette forwarded a check to Mr. Livengood in the sum of $2,000, " * * * as our contribution to the expense incurred by Fox Bros. and Celotex Corporation in the late unpleasantness," and also made reference to King Solomon and concluded the next to last sentence " * * * and I still have the pleasantest recollection of our shoulder to shoulder campaign in the late hostilities."

The factual situation as shown in the trial record has not all been commented on herein, but sufficient has been mentioned to show material facts so that the issues of malice and probable cause are pinpointed. At the close of the evidence defendant presented a motion for a directed verdict. At that time, as the

---

* June 10, 1949

Mr. Charles Livengood
Livengood & Livengood
First National Bank Building
Richmond, Indiana

Dear Mr. Livengood:

Pursuant to the conference which we held at the Hotel on the afternoon of June 6 we are pleased to enclose, herewith, our check for $2,000, as our contribution to the expenses incurred by Fox Brothers and Celotex Corporation in the late unpleasantness. You will note that the check is made payable to your firm. I am reminded of the classical story of the two women who appeared before King Solomon to claim ownership of an infant. According to the story Solomon displayed his superior wisdom by ordering that the infant be cut in exact halves with one-half to go to each claimant. Thereupon the real mother surrendered her claim to save the life of the child and thus proved her right to possession.

Should I credit you with the wisdom of Solomon our good friends Burr and Stamm might infer by parallel reasoning that they were classified as the squabbling concubines.

However, I believe that you can make the proper distribution of these funds to the satisfaction of everyone concerned.

We arrived safely in Pittsburgh Tuesday evening and I still have the pleasantest recollection of our shoulder to shoulder campaign in the late hostilities. Trusting that we may soon have the pleasure of seeing you again, I remain.

Yours very truly,
Aluminum Company of America
/s/ C. L. Lycette
Assistant Secretary

Encl.
CLL:M

trial judge I was convinced that plaintiff had presented an issue of fact as to whether defendant was motivated by malice in the entry of judgment on the notes. That issue was left to the jury and its answer was in the negative as heretofore indicated. At the trial I was convinced also that a negative answer on the malice issue by the jury ended the case. The basis for my view of the case at the close of the evidence was and is that without malice plaintiff's evidence, considered as a whole, will not support a recovery in his favor. It is to be again noticed in the Publix Drug Co. v. Breyer Ice Cream Co. case that one of the essentials in Pennsylvania is that plaintiff must show malice in the entry of the judgment. On this particular point the law of Pennsylvania is not entirely in accord with the Restatement. Chapter 30 of the Restatement on Torts, Section 674 et seq., entitled Wrongful Initiation of Civil Proceedings, does not mention as an essential requirement that malice must be a motivating factor in initiation of the prior civil case. However, Justice Parker's opinion in the Publix Drug Co. case states that malice is an essential requirement and he was speaking of the entry of a judgment by confession as in the instant case. See also Sharswood, J., in Mayer v. Walter as far back as 64 Pa. 283, at page 286, where he says, in speaking of a case of malicious use of legal process:

> " * * * As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause * *."

In the instant case, the principal items of evidence from which malice could have been found by the jury on the part of the defendant are the statement by Mr. Kipfer to the plaintiff on or about October 1, 1948 and the letter of June 10, 1949 by Mr. Lycette to Mr. Livengood. Plaintiff Baird testified as to what Mr. Kipfer said and he was uncontradicted. Mr. Lycette's letter was before the jury. It is noticed that as to these two items of evidence the statement by Mr. Kipfer occurred at the beginning of the differences between the parties and that the statement in the letter occurred after the plaintiff had been sold out by the sheriff. The jury had all the evidence as to events which occurred in between from which events as well as the two items mentioned, the jury might have found malice. Again, as between the parties in this case the evidence showed no substantial or material dispute as to the events which occurred. However, there is sharp controversy as to defendant's motives and as to whether defendant was entitled as a matter of law to proceed as it did.

■ The existence of probable cause on facts clearly shown is ordinarily a question for the judge to decide. Psinakis v. Psinakis, 3 Cir., 221 F.2d 418, at page 424. On this issue, at the close of the evidence I was convinced that unless there was malice plaintiff had failed to show that the judgment in Erie County had been entered by defendant without probable cause. It is, of course, true that in some situations malice may be inferred from want of probable cause. However, in this case plaintiff had averred malice as a separate and distinct issue and tried his case accordingly. Upon review of the evidence my opinion held at the trial remains the same. However, it was necessary for the jury to pass upon the issue of malice before the court could pass upon the issue of probable cause. Of course, at the trial it was necessary to submit to the jury all possible factual issues. However, the jury was instructed that if they found no malice that was the end of the case. Under the testimony of Messrs. Kyle and Held it is apparent that if malice was to be inferred it came from defendant's officers, such as Kipfer and Lycette. Mr. Kyle, as an attorney and expert witness, was permitted to testify that he was not motivated by malice. However, whether he was or not was still

left to the jury. But with malice out of the case, then it must be held as a matter of law that plaintiff failed to prove want of probable cause on the part of the defendant. In this connection, plaintiff's counsel at the oral argument indicated that the court's "greatest error" was in refusing to permit plaintiff to offer testimony that the decision before Judge Hoelscher in the Indiana court in the suit on the $10,000 note was influenced by improper or false testimony on the part of defendant's officers. It is to be remembered that the decision of the Indiana court was introduced as defensive matter by the defendant on the issue of probable cause only. Plaintiff was then permitted to show that Judge Hoelscher's decision had been reversed by a higher court of Indiana. Plaintiff in his brief assigns the ruling of the court as error and it is the first question he indicates is involved in this decision. Plaintiff's counsel cites Section 667 of the Restatement on Torts as his principal authority and says that such testimony was admissible under the provisions of Section 667 which ends: " * * * unless the conviction was obtained by fraud, perjury or other corrupt means." It is believed sufficient to say that this court still adheres to the trial ruling as being correct. The obvious answer to plaintiff's contention on this point is that Section 667 refers to the prior *criminal* action which is the foundation of and is the basis for the later civil suit. It is to be recalled and kept in mind in the instant case that the prior action complained of by the plaintiff is the entry of the judgment in the Prothonotary's office of Erie County. Plaintiff has averred that the entry of the judgment was done maliciously and without probable cause. That civil action was terminated in plaintiff's favor and as a result of the prior action, plaintiff claims damages against defendant in this present lawsuit. The Indiana lawsuit is not the basis for plaintiff's claim of damages against defendant in the present case. That lawsuit was entirely collateral to the instant case. It was introduced by defendant simply as a piece of evidence in support of its theory that it had probable cause for its action in Erie County. It is believed that the court's ruling with respect to the offer of plaintiff was and is correct.

At this point reference should be made to the new trial motion. Judgment was entered in this case on June 6, 1956. On June 12, Maurice J. Coughlin, Esq., as attorney for plaintiff, filed a motion for a new trial, assigning six reasons therefor. The first four are the usual ones, that is, that the verdict was contrary to the law, contrary to the evidence, etc. In reason No. 5 it is averred that plaintiff has discovered evidence since the date of the trial which was not available to him at the time of the trial and which directly rebuts the testimony of the witness Jacob B. Held, Esq. concerning statements supposedly made to him by Mr. Zuck, who held the first mortgage on plaintiff's properties. The reason assigned does not warrant serious consideration. It is merely a type of newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness and such evidence is not a basis for a new trial. See Brown v. Schwartz, 5 Cir., 164 F.2d 151. In any event, it relates to the issue of damages which is not reached in this decision.

Also within the ten-day period provided in Rule 59, John Gent, Esq., plaintiff's trial counsel, filed additional reasons for a new trial. The first reason raised the issue heretofore mentioned concerning the alleged error of the court in refusing to permit plaintiff to offer testimony that the decision in front of Judge Hoelscher was the result of alleged false evidence on the part of defendant. This matter needs no further comment. Mr. Gent's second and third reasons refer to rulings by the court with reference to the damage issue which again is not reached in this decision, except, however, that Mr. Gent in his second reason says also that he should have been permitted to argue to the jury that plaintiff's alleged loss of rentals after he was sold out by the

sheriff in June of 1950 to the date of trial was a matter from which an element of malice might be inferred. This court cannot see how its ruling could be held erroneous. It related to damages only.

On October 10, 1956, more than four months after judgment had been entered on the verdict, Mr. Knox, plaintiff's present counsel, filed some ten additional reasons in support of the motion for a new trial. Defendant says such additional reasons filed later than the ten-day period provided in Rule 59 should not be considered by the court. It is believed that defendant's position is correct. Chief Judge Watson so held in Schuyler v. United Air Lines, D.C., 94 F.Supp. 472, at page 477, and his decision was affirmed in all respects by the Court of Appeals of this circuit at 188 F.2d 968. Counsel for both sides cited several decisions on this point. However, counsel did not cite two cases which the court believes controlling. One is Judge Murphy's decision in Cheffey v. Pennsylvania R. Co., D.C., 79 F.Supp. 252, and the other is the decision of the Court of Appeals for the Seventh Circuit in Fine v. Paramount Pictures, 181 F.2d 300, and particularly the language of the court at page 303:

"A court may not grant a motion for a new trial on a reason assigned after the ten day period for filing and serving the motion has expired."

 It is therefore the position of this court that the reasons assigned by Mr. Knox are not timely presented. However, they have been examined and it is apparent to this court that had they been timely filed the reasons advanced by Mr. Knox would not require a new trial. The reasons advanced by Mr. Knox largely relate to the rulings of the court on the admission of evidence. It is believed that none of the rulings affected the substantial rights of the parties in this case and at the most were harmless error. See Rule 61.

In conclusion, it is the opinion of this court that plaintiff had a fair trial. It is this court's view that upon the whole record plaintiff did not and cannot make out a case of want of probable cause on the part of defendant. It should be mentioned that these parties had reached a point in their transactions where it was a debatable legal question as to their exact legal status. Attorneys might very well differ as to the proper step to be taken by each of them. It is noticed that judges did differ. At first glance it appears that substantial compliance was all that was required of plaintiff in the construction of the houses at the Homesite and that defendant's insistence that the F.H.A. certificates be procured was simply a technicality. From defendant's standpoint however it should be noticed that it primarily contracted for housing facilities for its people for a period of five years. It was willing to pay a substantial subsidy. It was generous toward the plaintiff in the advancement of funds in order that the project be completed. It extended the compliance date. Time was a material element in the contract from defendant's standpoint. It knew that the Prudential Insurance Company was financing plaintiff on an F.H.A. mortgage. If the Federal Housing Administration was not satisfied, the Homesite project was in jeopardy. It is apparent that plaintiff procrastinated toward the end of the completion of the Homesite project. Defendant sought the advice of independent and competent counsel. This is not such a case as warrants recovery for malicious use of legal process.

### Order

And Now, this 28th day of November, 1956, the motion of plaintiff J. Dwight Baird to set aside the verdict and judgment entered thereon and to grant a new trial is denied.