**J. Dwight BAIRD, Appellant,**

v.

**ALUMINUM SEAL COMPANY, Inc., an Indiana Corporation.**

**No. 12154.**

United States Court of Appeals
Third Circuit.

Argued Oct. 7, 1957.

Decided Dec. 26, 1957.

Rehearing Denied Jan. 21, 1958.

William W. Knox, Erie, Pa., for appellant.

Frank L. Seamans, Pittsburgh, Pa., (W. Gregg Kerr, Jr., Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The suit at bar, sounding in tort for malicious use and malicious abuse of

process, based upon diversity and jurisdictional amount, was brought by Baird against the appellee, Aluminum Seal Company, Inc.,[1] (Aluminum) an Indiana corporation. Baird alleged that Aluminum "willfully, wantonly, wrongfully, maliciously, and without probable cause" confessed judgment on Baird's judgment notes, thereby causing him to lose valuable properties. The notes had been issued by Baird pursuant to an escrow agreement dated May 14, 1947, which provided, after an amendment not pertinent, here, for their delivery to an escrow agent in exchange for $35,000 in cash payments to be made by the agent to Baird from a fund paid into escrow by Aluminum. Payments were to be made to Baird at stated intervals as the construction of thirty-five houses to be built by Baird in Richmond, Indiana, progressed. The construction contract for these houses provided that in consideration for the payment into escrow of the funds referred to, Aluminum was to have rental preferences for the benefit of its employees.

The escrow agreement provided that if Baird should complete the thirty-five houses within one year after May 14, 1947, and completion should be evidenced by the issuance of a Federal Housing Administration certificate, Baird would have perfected his right to the $35,000 subsidy in escrow. In that event the escrow agent was to return Baird's notes to him. If the houses were not completed by the time prescribed, the subsidy would be deemed not to have been earned by Baird and the escrow agent was to deliver Baird's judgment notes to Aluminum. If the housing project was completed and the FHA certificates procured Baird's notes were to be returned to him by the escrow agent.

Baird received a total of $35,000 from the escrow agent and gave the agent notes for that amount payable to Alu-

1. This action was brought against Aluminum Seal Co., Inc., an Indiana corporation, which is the successor to the rights and liabilities of Aluminum Seal Company, a Pennsylvania corporation, which originally contracted with the plaintiff. The Indiana corporation has been dissolved and its assets are now owned by its former parent, Aluminum Company of America, a Pennsylvania corporation.

minum. Of these notes $25,000 were promissory notes containing warrants of attorney for the confession of judgment. Another note for $10,000 contained no such authority. In addition to the moneys represented by the escrow subsidy, Aluminum made available to Baird additional substantial sums to be used by it in the construction of the building projects.[2]

At the end of the period for compliance with the terms of the escrow agreement, May 14, 1948, the houses were substantially completed although certain grading, paving and planting had not been done and Baird had *not* obtained FHA certificates as required by the agreement. Baird actually was in default on May 14, 1948 but on May 19, 1948 the escrow agreement was amended, to have "retroactive" effect, and the agreement as amended provided that Baird should have until August 12, 1948, to comply with its terms.

It is apparent from the record that Baird encountered financial difficulties and had trouble completing the project. Numerous troubles beset his venture. He had difficulty in procuring materials and skilled labor. A dispute as to rentals occurred between him and Aluminum. It was also alleged by Aluminum that moneys, aside from those of the escrow, loaned to Baird by Aluminum for use in the Richmond project had been diverted to other projects of Baird's. In October, 1948, the difficulties between Baird and Aluminum reached a climax when, according to Baird's testimony, Kipfer, Aluminum's President, ordered Baird to leave his office, saying, "You will be sorry for this day. We will get you. We'll get you good. You're through. You're done."

By January, 1949, Baird's financial difficulties had increased greatly. He informed Aluminum that he would be unable to meet a $5,000 payment required in reduction in the principal amount of the $65,000 mortgage referred to in note 2, supra, or even the interest payment then due on it. Baird also was in default on a $83,000 mortgage secured by a lien on apartment houses owned by him in Erie. On November 8, 1949, Lycette, assistant secretary of Aluminum, wrote a letter to Kunz, in charge of the escrow for the National Bank, saying that Aluminum had made Baird an offer to take over any equity which he might have in the Richmond project in consideration of a full discharge of all of Baird's indebtedness to Aluminum which was then in the amount of about $100,000. Baird rejected this offer. Early in November 1948, Aluminum sought the advice of William J. Kyle, Jr., Esquire, of Pittsburgh, a member in good standing of the Bar of Allegheny County, and Kyle demanded that the National Bank deliver Baird's escrow notes in the sum of $35,000 to him for Aluminum. Kyle informed Aluminum that in his opinion judgments should be confessed on the notes. On or about November 20, 1948, FHA acceptances finally were executed covering all the houses built by Baird at the Richmond development. In December, 1948, materialmen, Fox Brothers Manufacturing Company and Celotex Corporation, brought suits to secure liens on the Richmond properties in the amount of $17,500. Early in February, 1949, Baird caused all his Pennsylvania properties, except the four apartment houses in Erie, to be conveyed to himself and his wife as joint tenants, or as tenants by entireties. In re Vandergrift's Estate, 1932, 105 Pa.Super. 293, 161 A. 898. Baird and Aluminum attempted to effect a compromise but finally on March 22, 1949, after consulting with counsel in Erie, Aluminum caused judgment to be confessed on all Baird's escrow notes, save the one for $10,000 which contained no power of attorney authorizing confession of judgment, in the

---

2. On September 8, 1947, Aluminum advanced $50,000; on December 19, 1947, $25,000; on February 26, 1948, $65,000 was loaned to Baird which loan was secured by a second mortgage on four Erie apartment houses. Thus by the autumn of 1948 Aluminum had advanced to Baird approximately $125,000 in addition to the escrow subsidy for use in the Richmond housing project.

Court of Common Pleas of Erie County. It was the intention of Aluminum to procure judgments in the Circuit Court of Wayne County, Indiana. The Court of Common Pleas of Erie County, however, enjoined the use of exemplifications by Aluminum.

On April 1, 1949, Aluminum brought suit on the $10,000 note in the Circuit Court of Wayne County, Indiana. On April 26, 1949, Fox and Celotex secured judgments amounting to $17,500. In June, 1949, the Richmond properties were sold at sheriff's sale for $18,000 to an agent acting for Aluminum and a sheriff's deed was executed to Aluminum on June 6, 1949 conveying the Richmond properties to Aluminum. On June 10, 1949, a check in the sum of $2,000 was sent by Lycette for Aluminum to Livengood, representing both Fox and Celotex, which was divided equally by him between two lawyers, Burr and Stamm, who respectively represented the two materialmen. Livengood testified that the payments were made by him to Burr and Stamm for helping to cover certain expenses in the cases of the materialmen.

There was testimony to the effect that after the judgments in Erie County had been entered on the escrow notes that Baird's credit became frozen and he was unable to raise funds to cover or refund his indebtedness. Baird filed a petition to open and to strike off judgments in Erie County. The Court of Common Pleas of Erie County filed an opinion on July 14, 1950 which held in substance that there was a justiciable issue as to whether Baird had performed his obligations to Aluminum and therefore had become entitled to the subsidy represented in part by the $25,000 in notes. The Court of Common Pleas opened the judgments. On January 5, 1952, counsel for Aluminum discontinued the suit in the Court of Common Pleas. On March 2, 1953 the judgments were stricken off with consent of counsel. Counsel for Aluminum testified that the suit was not pursued because Aluminum was of the view that an execution against Baird could yield no assets.

As to the suit brought in the Circuit Court of Wayne County, Indiana, by Aluminum on the $10,000 note, that Court filed an opinion and rendered judgment in favor of Aluminum on February 16, 1951. On appeal the appellate court of Indiana reversed this judgment on May 14, 1952 and held that Baird was entitled to the subsidy. Review was denied by the Supreme Court of Indiana.

A few facts other than those which we have set out hereinbefore are brought out in the evidence but we have made no reference to them for they are irrelevant to the issues presented by the appeal at bar. We have reviewed the evidence rather fully to the end that the legal questions presented by this appeal may appear clearly.

Upon the close of the evidence Aluminum filed a motion for a directed verdict. The trial court concluded, however, that Baird had presented an issue of fact as to whether Aluminum was motivated by malice in entering judgments on the notes. Being of the view that in actions for malicious use of process the issue of malice has a direct bearing on probable cause, the court below refused to direct a verdict for Aluminum. It therefore submitted the issue of malice to the jury and on the jury's determination that there was no malice entered judgment in favor of Aluminum. Baird, alleging errors by the court below in the trial of the case, moved to set aside the verdict and for a new trial. This motion was denied. D.C.1956, 149 F.Supp. 874. The appeal followed.

■ The judgment will be affirmed. Helvering v. Gowran, 1937, 302 U.S. 238 at page 245, 58 S.Ct. 154, 82 L.Ed. 224; S. E. C. v. Chenery Corporation, 1942, 318 U.S. 80, at page 88, 63 S.Ct. 454, 87 L.Ed. 626. Jurisdiction in the case at bar, as we have stated, is based on diversity and jurisdictional amount and it is clear that the law of Pennsylvania governs for the cause of action set forth in the complaint is based on the entry of the judgments in the Court of Common Pleas of Erie County, Pennsylvania, though evidence as to Aluminum's

suit in Wayne County was offered and accepted by the court below as background and as going to the motives which animated Aluminum in its dealings with Baird. Klaxon v. Stentor Electric Manufacturing Co., 1941, 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The Pennsylvania decisions have drawn a distinction between actions for malicious *use* of process [3] and actions for malicious *abuse* of process.[4] The prime distinction between the two torts is that in actions for malicious use of process the original issuance of process cannot be justified on the facts, but the process is used in the manner in which the law contemplated its use. If the plaintiff has no cause of action against the defendant but nonetheless maliciously brings suit against him, the action is a malicious use of process. In actions for malicious abuse of process the original issuance of the process was justified but the process itself was put to an illegal use. If the plaintiff sues the defendant on a valid cause of action but brings the suit, for example, not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process. See Morphy v. Shipley, 1945, 351 Pa. 425, 41 A.2d 671; Publix Drug Co. v. Breyer Ice Cream Co., 1943, 347 Pa. 346, 32 A.2d 413; Mayer v. Walter, 1870, 64 Pa. 283. Employing the foregoing definitions we are of the opinion that the action at bar concerns the initiation of proceedings and not a perversion of them and that therefore the suit at bar is bottomed on malicious use of process.

Such an action is not looked upon with too great favor by the Courts of Pennsylvania. Geils v. Penn Sheraton Corp., 1952, 83 Pa.Dist. & Co. R. 410, and this has resulted in a strict formula of law which requires the plaintiff, if he is to maintain an action for malicious use of process, to allege and prove that the defendant has acted without probable cause, with malice, that the proceeding has terminated favorably to the plaintiff, and that there has been an arrest of the plaintiff or a seizure of his property. Publix Drug Co. v. Breyer's Ice Cream Co., supra; Beadle v. Friel, 1936, 320 Pa. 560, 183 A. 761; Garland v. Wilson, 1927, 289 Pa. 272, 137 A. 266. The plaintiff has the burden of proving every element, even though it be negative in form. Publix Drug Company v. Breyer Ice Cream, supra; Byers v. Ward, 1951, 368 Pa. 416, 84 A.2d 307.

A showing of lack of probable cause is essential. In Mayer v. Walter, supra, 64 Pa. at page 286, Mr. Justice Sharswood stated: "As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he acted not only maliciously, but without reasonable or probable cause."

Although it is true that malice and want of probable cause must both be present in order to make out a cause of action, these two terms are not synonymous. Simpson v. Montgomery Ward & Co., 1936, 354 Pa. 87, 46 A.2d 674; Taubman v. D. A. Schulte Inc., 1931, 302 Pa. 170, 153 A. 150. The issue of want of probable cause requires an objective test

---

3. See Restatement, Torts, Chapter 30, entitled: "Wrongful Initiation of Civil Proceedings, § 674. General Principle."
 "One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if
 (a) the proceedings are initiated
 (i) without probable cause, and
 (ii) primarily for a purpose other than that of securing the adjudication

of the claim on which the proceedings are based, and * * *."

4. See Restatement, Torts, Chapter 31, entitled "Abuse of Process, § 682. General Principle."
 "One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby."

to determine whether there was reasonable ground for an honest belief on the part of the defendant in the validity of his cause of action, while the decision upon the issue of malice bears solely upon the subjective issue of the defendant's motives.

 Under Pennsylvania law the issue of the existence of probable cause, upon facts clearly shown, is ordinarily a question for the court. Morphy v. Shipley, supra, 351 Pa. at page 431, 41 A.2d at page 674; Psinakis v. Psinakis, 3 Cir., 1955, 221 F.2d 418; Restatement, Torts, Vol. III, p. 381; Green, Judge and Jury 339 (1930). If the facts do not clearly appear the issue of probable cause may be sent to the jury for its determination. Curley v. Auto Financing Company, 1941, 343 Pa. 280, 23 A.2d 48, 139 A.L.R. 1082. If it be found by court or by jury that there was no probable cause the issue of malice then becomes a question of fact for the jury which is entitled to infer malice from want of probable cause. Hugee v. Pennsylvania R. R., 1954, 376 Pa. 286, 101 A.2d 740. Where it appears that there was probable cause to institute the original proceedings such a fact constitutes an absolute bar to an action of malicious use irrespective of the motive in instituting the action. Curley v. Auto Finance Company, 1941, 343 Pa. 280, 23 A.2d 48, 139 A.L.R. 1082; McClafferty v. Philp, 1892, 151 Pa. 86, 24 A. 1042; Dietz v. Langfitt, 1869, 63 Pa. 234. It follows that if the evidence in the case at bar showed clearly that Aluminum had acted with probable cause in confessing judgments on the notes, without regard to Aluminum's motive, the court below erred in not granting Aluminum a directed verdict at the close of the evidence. This was a question for the court.

The trial court misconceived the law and without ruling upon the issue of probable cause sent the issue of malice to the jury which in answer to a special question propounded to it by the court answered that there was no malice. But the court below in its opinion, 149 F. Supp. at pages 880–881, clearly indicates that it was of the view at the close of the evidence, that there was probable cause, albeit it erroneously conceived that an inference of lack of probable cause could be drawn from a finding of malice. We are of the opinion that the evidence clearly shows that there was no lack of probable cause and that the court below in effect in its opinion on Baird's motion to set aside the verdict and judgment thereon, 149 F.Supp. 874, made a finding of no lack of probable cause and that it was correct in this final determination. Nor do we think that any evidence offered by Baird and rejected by the court could possibly cause a correct contrary conclusion. The existence of probable cause so clearly appears from the record as to bring us to the opinion that the court below should have directed a verdict in favor of Aluminum under Rule 50(b), Fed.R.Civ.Proc., 28 U.S.C.

But there are other barriers which prevent recovery by Baird. As we have stated, one of the elements necessary to enable him to maintain an action for malicious use of process was a termination of the suits on the notes in his favor in the Court of Common Pleas of Erie County. This is hornbook law. It is clear that Baird did not obtain such a termination. In seeking to show a termination of the suits in his favor he relies, apparently alternatively, on the voluntary discontinuance by Aluminum of the suits on January 5, 1952, or on the striking off of the judgments on March 22, 1953, with the consent of counsel for the parties.

 As to the first issue presented, the discontinuance was effected by Aluminum's attorneys under Rule 229 of the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix.[5] The voluntary dismissal of the suits by Aluminum can-

---

5. "Rule 229. Discontinuance
 "(a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial." See 2 Goodrich-Amram, Pennsylvania Civil Practice, § 229, p. 149 (1946).

not constitute a termination of the litigation in Baird's favor under the circumstances presented by the case at bar. This motion by Aluminum was null in effect and could not amount to a termination of the action. When a rule to open a judgment has been entered and an issue is framed for trial, this is a ruling that there is a question as to the validity of the judgment. However, while an order making absolute a rule to open a judgment opens the whole matter for further action of the court, both the judgment and the lien of the judgment remain in effect. Markofski v. Yanks, 1929, 297 Pa. 74, 146 A. 569; Adams v. James L. Leeds Co., 1899, 189 Pa. 544, 42 A. 195. A discontinuance does not, like a retraxit, operate as an extinguishment of the cause of action, but leaves Aluminum free to bring another suit. 2 Goodrich-Amram, Pennsylvania Civil Practice § 229(a)–1, p. 149 (1946); Kennedy v. McNickle, 1868, 2 Brewst., Pa., 536, 537. To permit the discontinuance while the judgment is still in effect and the validity of the judgment open to dispute would deprive Baird of the right to have his contention as to the validity of the judgment adjudicated. Therefore, although Rule 229, supra, sanctions a discontinuance before commencement of the trial, Aluminum had no right to discontinue after a final judgment, notwithstanding the pendency of the rule to open. 2 Anderson's Pennsylvania Civil Practice 122 (1954); Rudolph v. Sturges, 1900, 11 Pa. Dist.R. 395; Kennedy v. McNickle, supra.

█ As to the striking off of the judgments, since this was done by the court upon a consensual motion of the parties such a termination of the actions cannot be considered as adverse to either party. Restatement, Torts, Vol. III, § 674, comment on clause (b); Prosser, Torts, 651 (1955); 54 C.J.S. Malicious Prosecution § 58. It is clear therefore that Baird has not met the requirement necessary for the maintenance of a suit for malicious use of process.

█ But there is yet another bar to Baird's recovery in his action for malicious use of process. The Pennsylvania Courts following the Statute of Marlbridge (52 Henry III) have held consistently that an action for malicious use or abuse of process will not lie "If the person be not arrested nor his property seized, no matter how futile and unfounded the action may be." Garland v. Wilson, 1927, 289 Pa. 272, 137 A. 266; White v. Rosenbaum Co., 1919, 73 Pa.Super. 99. What is more, a mere indirect injury to a person's credit or to his name is insufficient. Snyder v. Shuster, 1921, 37 Montgomery Co. Law Rep., Pa., 259.

█ In this respect, the remarks of Mr. Justice Gordon in Muldoon v. Rickey, 1883, 103 Pa. 110, 113, are peculiarly pertinent: "The action of ejectment temporarily clouds the title to the property in controversy, and so may for the time prevent a sale of or a mortgage upon it. But a damage of this kind is not more direct than that resulting from the expenses, loss of time and often loss of credit arising from the ordinary forms of legal controversy. All are troublesome, expensive and often ruinous, and if for such damage the action of case could be maintained, there would be no end to litigation for the conclusion of one suit would be but the beginning of another." Under the law of Pennsylvania a judgment is a lien on all real property of the debtor. Act of July 3, 1947, P.L. 1234, § 2, 12 P.S.Pa. § 878. It is true that a lien makes it difficult to make an advantageous sale of property or to borrow money upon it, but the lien does not preclude such activities so long as the purchaser or creditor is willing to take subject to the lien, or the debtor is able to effect some form of refinancing. A lien on a property does not amount to a seizure.

We have stated that Baird's action was one based on malicious use of process. But even if his action were one deemed to be based on malicious abuse of process —which it is not—the bar set out in the last preceding two paragraphs of this opinion would not permit him to maintain such a cause of action.

Baird has made a motion to this court to permit the trial court to consider a motion based on newly discovered evidence, for relief from the judgment against him. We have considered this motion and we are of the opinion that even if Baird were able to show all that he sets up in the motion and the affidavits accompanying it, such evidence, assuming it to be newly discovered in the sense required by law, could have no effect upon the judgment.

The judgment of the court below will be affirmed.