**James R. RUSSELL, Jr., Plaintiff,**

v.

**MONONGAHELA RAILWAY COMPA-NY, a corporation, Defendant.**

**Civ. A. No. 13131.**

United States District Court
W. D. Pennsylvania.
Feb. 24, 1958.

Samuel W. Pringle, of Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

WALLACE S. GOURLEY, Chief Judge.

This is an action under the Federal Employers' Liability Act to recover damages for injuries sustained while plaintiff was employed as a brakeman for Monongahela Railway Company. 45 U. S.C.A. § 51 et seq.

Upon jury trial verdict was returned in favor of plaintiff in the amount of $149,388.

In answer to specific interrogatories, the jury found the total amount of damages to be $186,735 but attributed twenty per cent of the negligence which was a proximate cause of the accident to plaintiff.[1]

The sole matter before the court is defendant's motion for new trial.

Defendant filed timely motion for new trial assigning the following reasons:

1. The verdict was grossly excessive and appears to have been rendered under the influence of sympathy, passion or prejudice.

2. The jury's finding as to the total amount of damages suffered by the plaintiff was not supported by sufficient, competent and credible evidence.

3. The verdict was contrary to the law and the evidence.

4. The finding of the jury that the contributory negligence of the plaintiff constituted only twenty percent of the

Albert D. Brandon, Pittsburgh, Pa., for plaintiff.

I. Interrogatories

What was the total amount of damages suffered by the plaintiff, James R. Russell Jr., which was the proximate result of the accident without any consideration being given to negligence or contributory negligence?

Answer—$186,735.00

Was the plaintiff, James R. Russell, Jr., guilty of contributory negligence which was a proximate cause of the accident in whole or in part?

Answer—Yes

Should the answer to the above question be in the affirmative, state the extent or the amount of the negligence of the plaintiff, James R. Russell Jr., which was a proximate cause of the accident in whole or in part?

Answer: 20%

Was the defendant, Monongahela Railway Company, a corporation, guilty of negligence which was a proximate cause of the accident in whole or in part?

Answer: Yes

Should the answer to the above question be in the affirmative, state the extent or the amount of the negligence of the defendant, Monongahela Railway Company, a corporation, which was a proximate cause of the accident in whole or in part.

Answer: 80%

negligence proximately causing the accident was against the evidence and the weight of the evidence.

5. The Court erred in sending the jury out for further deliberation instead of reforming the general verdict in open court in accordance with the original finding as to total damages and percentage of negligence attributable to the plaintiff, as shown by the answers of the jury to interrogatories propounded by the court.

6. The Court erred in overruling motion of defendant's attorney to withdraw a juror because of improper arguments made by plaintiff's attorney in his closing speech to the jury, and in permitting plaintiff's attorney to present improper and unwarranted arguments.

7. Repeated criticism of defendant's attorney by the Court was prejudicial to the defendant.

8. The Court erred in requiring defendant's attorney on two occasions to state if his purpose in offering certain testimony through the witness Vickers was to have the jury infer that plaintiff is assured of future employment by the defendant. The prejudice to the defendant was accentuated by the reference made to this matter in the closing speech of plaintiff's attorney to the jury.

9. The Court erred in admitting over objection certain testimony of the witness Titler, and in denying motion of defendant's attorney to withdraw a juror made in connection therewith.

10. The Court erred in admitting certain evidence offered by plaintiff and in other rulings relating to admission or exclusion of testimony.

■ Approximately eight months after filing the instant motion, defendant filed a supplementary list of ten additional reasons in support of its motion relating to court rulings during course of trial and alleging improper and abusive remarks on the part of plaintiff's counsel in his closing address. I am satisfied that a court may not grant a motion for new trial on reasons assigned after the ten day period for filing and serving the motion has expired. Schuyler v. United Air Lines, D.C., 94 F.Supp. 472, 477, affirmed, 3 Cir., 188 F.2d 968; Cheffey v. Pennsylvania R. Co., D.C., 79 F.Supp. 252; Fine v. Paramount Pictures, 7 Cir., 181 F.2d 300; Baird v. Aluminum Seal Co., D.C., 149 F.Supp. 874, 3 Cir., 250 F.2d 595.

Assuming, however, that this court is in error in its views relative to issues raised after the expiration of the ten day limitation in filing reasons for motion for new trial, I shall consider the merits of all issues raised both during and subsequent to the period authorized under the Federal Rules of Civil Procedure, rule 59, 28 U.S.C.A.

The additional reasons presented after the ten day period had expired are as follows:

1. The court erred in overruling objection of defendant's attorney to questions propounded to witness Keene as to why the trainmen switched Arkwright mine on the blind when they did not regard such procedure as either in accordance with the Company rules or safe.

2. The court erred in admitting over objection the testimony of plaintiff that four men have been made regular yardmasters by appointment to vacancies since February 21, 1955.

3. The court erred in overruling objection of defendant's attorney to question asked the witness Fata that it take practically no expenditure of money to cover a switch so that coal will not drop into space around the switch rods, which question was followed by a statement by plaintiff's attorney asserting a fact as to practice on other railroads which was not supported by any proof thereof.

4. The rulings made and action taken by the court to have Saxe examined by a physician and brought to court in the custody of a deputy United States Marshal, based only on the incompleted testimony of West, were unwarranted, in view of the representations made to the court by defendant's attorney and request that defendant be given a further opportunity to get Saxe into court.

After refusing to move for the withdrawal of a juror and continuance of the case when the court indicated that such motion would be granted and defendant's attorney acquiesced therein, the plaintiff's attorney engaged in recriminations and made wholly unwarranted, inaccurate and inflammatory statements in his closing address to the jury which resulted in substantial prejudice to the defendant.

5. The court erred in overruling objection of defendant's attorney to the question asked Saxe by plaintiff's attorney: "Had you ever known of any prior occasion of the James G. Blaine Lodge of the Brotherhood of Railroad Trainmen using goons?"

6. The court erred in overruling objection of defendant's attorney to question asked the witness Vickers about the issue of trying to enforce 65 years compulsory retirement being now a very big issue within the railroad unions.

7. The court erred in pressing defendant's attorney on two occasions to state whether he wanted the jury to infer or find from Vickers' testimony that plaintiff would have work with the defendant after the case was over; the substantial prejudice to the defendant therefrom was accentuated by the reference thereto made by plaintiff's attorney in his closing address in which he told the jury in effect that had defendant's attorney answered "Yes" to the court's question, this would have constituted a promise by the defendant to give plaintiff the job of yardmaster.

8. The court erred in admitting over objections thereto by defendant's attorney testimony of the witness Titler in rebuttal to the effect that unless an injured employee is in a protected seniority position and actually on an active duty status at the time his case is heard or settlement made, it is the policy of the defendant never to put him back to work; that no operating official of defendant company has any power to change this policy; and that The Pennsylvania, P. & L. E. and B. & O. Railroads own the defendant company and all have to agree before a policy is made.

9. The court erred in refusing defendant attorney's motion to strike a question propounded to Titler and his answer thereto presenting the view that union seniority is not what keeps men from working on the railroad after they have been disabled and that the Brotherhood of Railroad Trainmen has no such policy.

10. The closing address of plaintiff's attorney was so replete with unwarranted, improper and abusive attacks upon defendant's attorney, and with repeated references to matters either wholly irrelevant to the issues before the jury or unsupported by any evidence in the case as to confuse and mislead the jury to the substantial prejudice of the defendant, especially since the court did not at any time reprimand counsel or express disapproval of any such statements.

Considering all the evidence in a most favorable light to the plaintiff's claim, it appears that on February 21, 1955, at about 10:30 P.M., plaintiff brakeman was engaged in moving thirty-five hopper cars loaded with coal out of the Arkwright mine located near the Maidsville, West Virginia, yards of defendant. Plaintiff was performing a blind switching operation, being the practice generally followed by crews servicing this mine. Plaintiff attempted to throw a certain switch which did not function properly, as a consequence of which he attempted to apply the emergency airbrakes. A violent jerk occurred as he was swinging around the corner of the car to get where he could open the angle cock and his left foot which was on the end-sill grab iron slipped causing him to fall from the car.

Most substantial dispute arose during trial as to the circumstances under which the accident occurred and as to the contributory negligence of the plaintiff. There was, indeed, sufficient proof of negligence to present a jury question. Rodgers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

■ No exceptions were taken to the charge of the court. The law is well settled that if upon consideration of the record there is evidence or any inference which may be drawn from the evidence, which when viewed in a light most favorable to the plaintiff, a recovery can be sustained, the jury's verdict cannot be disturbed. In the instant case there was in the record evidence or inferences reasonably drawn from the evidence, in viewing the circumstances of the blind switching operation, the unusual and extraordinary lurching of the train, and the condition of the surrounding equipment, from which the jury could have found negligence on the defendant's part which contributed to plaintiff's injuries. Thomas v. Conemaugh & Black Lick R. Co., 3 Cir., 234 F.2d 429.

To summarily expunge this testimony, and substitute the personal beliefs of the court, would do violence to the processes and purport of the jury trial, both as to the issues of negligence and contributory negligence.

### Witness Vickers

■ Where this court, in order to enter a firm ruling as to the admissibility of testimony to which objection has been made, makes inquiry of counsel producing said testimony as to its purpose and germaneness, counsel's complaint that such inquiry prejudiced his case is without merit.

■■ Defendant's attorney was entitled to contend that plaintiff would have remunerative employment with the Railroad after conclusion of the trial, as he apparently sought to establish through defense witness Vickers. Nevertheless, he objected repeatedly to rebuttal testimony on this subject, and the court made the inquiries complained of, in an effort to elicit the grounds of the defendant's objection, whether defendant had taken the position that plaintiff would or would not be employed by defendant Railroad subsequent to conclusion of trial. Nor was there anything improper in plaintiff's counsel arguing that the Railroad Company was putting a witness on the witness stand whose testimony the defense lawyer refused to adopt. I know of no rule of law, equity or simple justice that has ever prevented an attorney from commenting upon the legal positions taken by opposing counsel in the course of a lawsuit.

### Witness Saxe

■ In the course of trial, defense counsel elicited testimony from one of defendant's witnesses that a certain party by the name of Saxe, who was a material witness to the proceeding, was unavailable since, as he was advised, Saxe was injured by reason of an assault committed upon him by a fellow workman with the apparent motive of keeping him from testifying in court. Inferentially the jury was led to conclude by said testimony that plaintiff, or his counsel, or union members sympathetic to him had instigated the assault to prevent the introduction of damaging testimony.

This court is most cognizant and scrupulously concerned that any act of intimidation of any witness to prevent his testifying in the United States Court is a violation of the Federal Code, 18 U.S.C.A. § 1503. Perhaps, even more significant to the case itself was the undoubted and crucial effect of such testimony in influencing a jury. In order that the matter be resolved with finality and truthfulness, the court granted the request of plaintiff's attorney to have a physician accompany the Deputy United States Marshal to West Virginia and bring Saxe into court, provided he was found to be in physical condition to appear.

I have always felt, and have frequently reiterated that I do not consider a court of justice a boxing ring to match competitive skills. Rather, I deem a court as a forum where all relevant facts, from which honest and impartial minds may deduce the truth, must be presented. Trick or artifice, concealment or subterfuge have no place in a court of justice.

A presiding judge would prove derelict in his duty to the fair and impartial administration of justice were he to counte-

nance a proceeding which left questions for the determination of a jury upon which known, available and relevant information was not produced to assist them in their deliberations.

### Remoulding Verdict

■ The contention of defense counsel that the court should have remoulded the verdict instead of returning the jury for further deliberation to correct a patent error in calculation, is without substance. Where the general verdict was inconsistent with the specific findings in answer to the interrogatories propounded, I am satisfied that the court was justified in returning the jury for further deliberation in order that a verdict might be rendered consistent with law and the instructions of the court. For the court to interject itself so as to remould the verdict, when the court was not apprised of the manifest intention of the jury as to its desire to abide by the general verdict on the one hand or the directives contained in the interrogatories on the other, in my judgment would have unreasonably and arbitrarily usurped the function of the jury.

### Excessiveness of Verdict

At first impression, an award for personal injury in the amount of $186,735 appears to be of great magnitude and subject to severe scrutiny.

Plaintiff suffered almost complete traumatic amputation of the left foot and lower leg at a point just above the ankle with fractures and crushing injury of the muscles and soft tissues of the lower leg. Two operations involving revisions of his below the knee stump have been performed and in addition an excision was performed on a draining sinus. Plaintiff wears a prosthesis, but recurrent infection prevented wearing of the prosthesis from time to time. It is not in dispute that plaintiff should not continue as a yard freight brakeman which involves jumping on and off rapidly moving freight cars.

The trauma of the accident was extremely shocking, involving excruciating pain. Pain, suffering and inconvenience of a most substantial nature has existed and will continue to one degree or the other as long as the plaintiff lives. Plaintiff has never obtained a good stump so that he suffers pain and a breakdown at this spot on frequent occasions.

■ Plaintiff had a life expectancy of 37.6 years and an earning capacity in excess of six thousand dollars a year prior to the accident. It is well known in railroad parlance that seniority begets higher status in job assignments. In addition to his railroad earnings, he earned money in hauling coal by truck.

Even assuming a fifty per cent disability, plaintiff on the basis of a six thousand dollar earning capacity per annum, would have suffered a loss of future earnings in the amount of $112,-800. Pain, suffering, inconvenience and disfigurement, and their accompanying impact upon the psychological make-up and perspective upon plaintiff's life is appalling. I cannot conclude, in view of the extraordinary trauma which plaintiff endured, that the verdict is excessive and shocks the conscience of the court, or that it appears that the jury was biased or acted capriciously or unreasonably. Thomas v. Conemaugh & Black Lick R. Co., supra.

■ As this Circuit has frequently reiterated, while an award may be high, it should stand if there is ample evidence to justify it. It is not my prerogative to arbitrarily substitute my judgment for that of the jury. O'Toole v. United States, 3 Cir., 242 F.2d 308; Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 190 F.2d 825; Lebeck v. William A. Jarvis, Inc., 3 Cir., 250 F.2d 285.

### Argument to Jury

It is noteworthy that defendant's initial motion for new trial complained of two instances of plaintiff attorney's summation adverting to his reference to damages and comment concerning testimony of witness Vickers. The supplemental motion, filed some nine months thereafter, complains of personal innu-

endo and attack. I cannot but help conclude that the belated references are without any substance in view of the heated nature of the trial and of the provocative actions of counsel.

■ The general rule in the Federal Courts has been that the remarks of counsel to the jury on the merits, to constitute reversible error, must be objected to at the time, be unwarranted by the pleadings and evidence, have a tendency to mislead or prejudice the jury, and be to more or less extent approved by the trial judge. Alabama G. S. Ry. Co. v. Carroll, 5 Cir., 84 F. 772, 784; Uhl v. Echols Transfer Co., 5 Cir., 238 F.2d 760.

■ Defendant counsel interrupted plaintiff counsel on three separate occasions in the course of his summation, but made no general objection at the close of the address. The objections were directed—

(a) At counsel's reference to defendant's vacillating efforts in going to trial.

(b) At counsel's comment on defendant witness's Vickers testimony as to inferences to be drawn as to the probability of plaintiff retaining his employment with defendant after the conclusion of this action.

(c) At counsel's computation of impairment of earning power predicated upon hypothetical percentages of disability as calculated in conjunction with the United States Life Tables, U. S. Dept. of Health, Education and Welfare.

In the first instance the court most meticulously admonished plaintiff's counsel to adhere strictly to evidence and inferences to be drawn therefrom in his closing argument to the jury. In the latter two instances the court overruled defendant's objections in view of the court's belief that plaintiff was entitled to argue the inferences to be drawn as to whether plaintiff would be returned to his job with the railroad after the case was concluded, which, indeed, was a crucial issue in the jury's determination of the degree of impairment of earning power based upon mortality tables and percentage of disability properly deducible from the evidence.

## Admissibility of Evidence

The divers rulings on admissibility of evidence were predicated upon relevancy and the rules of evidence of the United States Court, and no purpose could be served in elaborating the basis and reasoning upon which each ruling was predicated. Suffice it to say, it is my considered judgment that the record supports the rulings of the court in each instance, or should error have been committed in any particular, no such error could have resulted, or did result in substantial prejudice to the defendant.

## Conduct of Plaintiff's Counsel

I am satisfied that this court conducted the trial of this case with a sense of strict impartiality and fairness. A hotly contested case, as this one proved to be, inevitably aroused comment of the court or counsel, which isolated from context or devoid of the atmosphere or manner in which it was spoken may raise doubts of propriety. Nevertheless, no comment in this record when taken in the proper perspective and balance of the entire record could be deemed to have improperly influenced the jury. Goldstein v. United States, 8 Cir., 63 F.2d 609; Throckmorton v. St. Louis-San Francisco Ry. Co., 8 Cir., 179 F.2d 165.

Considered as a whole, without isolating or separating portions of the record, I feel that the record adequately presented the issues to the jury for its determination. Van Camp Sea Food Co. v. Nordyke, 9 Cir., 140 F.2d 902; certiorari denied 322 U.S. 760, 64 S.Ct. 1278, 88 L.Ed. 1587; Commonwealth v. Cargill, 357 Pa. 510, 55 A.2d 373.

In a prolonged and protracted contest, too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made momentous merely by making record of them. Therefore, though a trial

judge is an administrator primarily charged with the just conduct of the trial, he may not ordinarily be put in error merely because an aberration from trial rules has occurred. It is the duty of counsel by objection to call such threatened or actual departure to the judge's attention, and invoke his corrective action, and, if overruled, to make it appear that prejudice has resulted.

Indeed, I am further cognizant of the rule that a trial judge may never abdicate his function, or surrender to counsel the conduct of the trial and that he must exercise his function to guide and control it. Glassine Paper Co. v. Shannon, 2 Cir., 238 F.2d 765.

It will serve no useful purpose for me to itemize and discuss seriatim the divers things said and done by plaintiff's counsel which defendant puts forward as grounds for new trial. Defendant advances the proposition that within the rule laid down and applied in Robinson v. Pennsylvania Ry. Co., 3 Cir., 214 F.2d 798, there was an entire course of reprehensible conduct which, permitting the case to get out of bounds, weighted the scales against the defendant and prejudiced a just result.

Upon a most complete and exhaustive review of the entire record, encompassing 1,736 pages, in the course of which I meticulously evaluated the summation address of plaintiff's counsel in the light of the evidence and inferences to be drawn therefrom which was produced by defendant in the course of trial, and further examining the record in the light thrown on it by the contentions and arguments of plaintiff and defendant and the principles of law herein enunciated, I must conclude that the record does not show that at any point or at any particular this court abdicated its function, surrendered to counsel the conduct of the trial, or in any other way permitted to prejudicial error to creep into and prevent justice in the case.

Defendant's motion for new trial will be refused.

An appropriate order is entered.

